**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bennie LEE, Defendant–Appellant.**

**No. 95–2924.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 23, 1996.

Decided March 20, 1996.

Thomas P. Schneider, Daniel Flaherty (argued), Office of U.S. Atty., Milwaukee, WI, for plaintiff-appellee.

Joseph A. Kaye (argued), Glendale, WI, for defendant-appellant.

Before POSNER, Chief Judge, and BAUER and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

The Sentencing Reform Act of 1984 abolished parole in the federal system and replaced it with a different creature: supervised release. Supervised release is a new type of sentence added to the sentence imposed for the underlying crime of conviction. Today, supervised release is one of the least understood parts of the federal sentencing guideline system. It is also causing headaches for federal district court judges.

According to the Administrative Office of the United States Courts, 5,011 offenders were on supervised release at the end of June of 1990, a little less than three years after the sentencing guidelines took effect. Two years later, in June of 1992, the number jumped to 19,362. The number ballooned to 35,087 two years later, in June of 1994. The numbers, it appears, will keep growing, and so will the number of supervised release revocation proceedings. Unlike the old system, revocation of supervised release is a judicial function. Parole revocation hearings, of course, were administrative matters carried out by the executive branch. Over the last several years, the number of supervised release revocation hearings entertained in the district courts have skyrocketed. District judges today are committing more and more time to supervised release revocation proceedings. This is a matter of concern.

Because supervised release is relatively new, so are many of the legal issues it raises. The appeal in today's case presents a question of first impression: how to grade offenses for revocation of supervised release pursuant to Chapter 7 of the United States Sentencing Guidelines.

In 1991, Bennie Lee was convicted of being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). He was sentenced to a term of 37 months imprisonment, to be followed by 5 years of supervised release. Lee completed his term of imprisonment and began doing his supervised release time on October 7, 1994. Five days later, Lee was in hot water as he was arrested for shoplifting in Racine, Wisconsin. He was charged with five counts of retail theft under Wisconsin law. Wis. Stat. § 943.50. Because each theft involved merchandise valued at less than $1000, each was a Wisconsin Class A misdemeanor carrying a maximum penalty of nine months imprisonment. Wis. Stat. §§ 943.50(4)(a); 939.51(3)(a). Due, however, to Lee's criminal history, Wisconsin's habitual offender statute kicked in and increased the maximum penalty for each count to three years imprisonment. Wis. Stat. § 939.62(1)(a).

Lee was convicted on all five counts, and the Wisconsin court sentenced him to two consecutive 20–month sentences. Three consecutive sentences of 30 months each were stayed.

Lee's shoplifting convictions—along with urine samples showing he used cocaine—violated the terms of his federal supervised release. The district court revoked Lee's supervised release and sentenced him to 24 months imprisonment. At the revocation hearing, Lee objected to the court's determination of the grade of his violation under § 7B1.1(a) of the guidelines. The issue on this appeal is whether the district court should have considered the increased punishment Lee faced under Wisconsin's habitual offender law in determining the grade of his violation of supervised release.

Before reaching the question of whether the district court correctly slotted the grade of Lee's violation, we must note the correct standard under which to review the determination. Lee contends the standard is de novo; the government argues it is "plainly unreasonable." According to the government, because Chapter 7 of the sen-

tencing guidelines is—in its entirety—advisory, there are no binding guidelines for sentences imposed after a violation of supervised release is detected. In the absence of binding guidelines, the government contends, we may review Lee's sentence only for whether it is plainly unreasonable.

■ The government is correct that Chapter 7 does not contain mandatory guidelines for terms of imprisonment upon revocation of supervised release; instead, it contains only advisory "policy statements." *United States v. Hill*, 48 F.3d 228, 231 (7th Cir.1995). And the government is also correct that once the sentencing judge has exercised discretion in such a situation, we may review a defendant's sentence only for whether it is plainly unreasonable. *United States v. McGee*, 60 F.3d 1266, 1272 (7th Cir.1995). But the government cites no authority stating that questions of interpretation of guidelines policy statements are subject to review only for whether they are plainly unreasonable.

■ More to the point, however, the government's argument overlooks a crucial requirement: in exercising discretion, district courts must first consider—though they are free thereafter to disregard—Chapter 7's recommended sentence. It therefore follows that implicit in this requirement is an obligation to consider only correct interpretations of Chapter 7. And whether a district court has correctly interpreted a guidelines section—whether binding or advisory—is a question which must be reviewed de novo by a court of appeals. We shall soon see why this is so.

As part of its discretion when imposing a sentence, the district court "shall consider ... any pertinent policy statement issued by the Sentencing Commission...." 18 U.S.C. § 3553(a)(5). In *Hill*, we described the weight a district court must give to the policy statements in Chapter 7:

> [The policy statements in Chapter 7] tell the district judge how to exercise his discretion.... Such policy statements are entitled to great weight because the Sentencing Commission is the expert body on federal sentencing, but they do not bind

the sentencing judge.... [T]hey are an element in his exercise of discretion and it would be an abuse of discretion for him to ignore them....

*Hill*, 48 F.3d at 231.

It would be inconsistent to hold that although a district court must consider the policy statements in Chapter 7—in fact it would be an abuse of discretion not to do so—our review of the district court's interpretation is governed by the generous "plainly unreasonable" standard. Consideration of an incorrect interpretation of the policy statements in Chapter 7 eviscerates the requirement that the district court consider them in the first place.

■ Thus, we reject the government's position and hold instead that interpretations of Chapter 7—like all questions of statutory interpretation—are reviewed de novo. Cf. *McNary v. Haitian Refugee Center*, 498 U.S. 479, 493, 111 S.Ct. 888, 896, 112 L.Ed.2d 1005 (1991) (holding that statutory and constitutional claims are reviewed de novo). If a district court correctly interprets and considers the provisions of Chapter 7, the court may then disregard the recommended sentence and impose any sentence subject to the maximum caps imposed by 18 U.S.C. § 3583(e)(3). Our review of that sentence would then be under the "plainly unreasonable" standard. See, e.g., *McGee*, 60 F.3d at 1266; *Mathena*, 23 F.3d at 89. Where, however, a district court incorrectly interprets the policy statements of Chapter 7, we will remand for resentencing unless we conclude that the error did not affect the district court's selection of the sentence imposed. *Williams v. United States*, 503 U.S. 193, 202–03, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992); see also *United States v. Lindo*, 52 F.3d 106, 108 (6th Cir.1995); *United States v. Hensley*, 36 F.3d 39, 42–42 (8th Cir.1994). Thus, we review de novo Lee's claim that the district court incorrectly interpreted the provisions of Chapter 7 when sentencing him.

■ The recommended term of imprisonment for a violation of supervised release is determined by the grade of the offender's violation and his criminal history category at the time he was originally sentenced to the

term of supervision. U.S.S.G. § 7B1.4(a). The grade of the offender's violation, in turn, is determined by his "conduct constituting an offense" under federal, state, or local law. § 7B1.1(a).

There are three grades of severity for violations of supervised release: Grade A violations are the most serious, Grade B violations are intermediate, and Grade C violations are the least serious. Grade A is not relevant to this appeal. "[C]onduct constituting any [ ] federal, state, or local offense [besides Grade A offenses] punishable by a term of imprisonment exceeding one year" is a Grade B violation. U.S.S.G. § 7B1.1(a)(2). "[C]onduct constituting [ ] a federal, state, or local offense punishable by a term of imprisonment of one year or less" is a Grade C violation. U.S.S.G. § 7B1.1(a)(3). The application notes to this section state that:

> [t]he grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade of the violation is to be based on the defendant's actual conduct.

U.S.S.G. § 7B1.1, comment (n.1).

Lee contends that because retail theft of less than $1000 is punishable by a maximum term of nine months imprisonment in Wisconsin, he committed only Grade C violations. (In revoking supervised release, a district court considers only the grade of the most serious violation. U.S.S.G. § 7B1.1(b). Because all five counts for which Lee was convicted were identical, this appeal concerns only how any single count should have been graded.) Given Lee's criminal history category of VI, a Grade C violation yields a recommended range of 8–14 months imprisonment. U.S.S.G. § 7B1.4. In contrast, the government argued—and the district court held—that because Lee was subject to up to three years imprisonment for each count under Wisconsin's habitual offender enhancement, he committed a Grade B violation. The district court imposed a 24–month sentence, smack dab in the middle of the recommended 21–to 27–month range for Class B violations.

▬ Our research found no cases which previously addressed this issue. In this ap-

peal, though, the government argues that because the Wisconsin court could have sentenced Lee to three years imprisonment for each count for which he was convicted, ipso facto, Lee was guilty of conduct punishable by a term of imprisonment exceeding one year. We disagree. The guidelines do not look merely to the maximum term of imprisonment the offender could have received for his conduct. For example, § 7B1.1(b) directs the court to consider only the grade of the offender's most serious violation. Thus, if an offender committed numerous misdemeanors—and thus faced exposure to more than a year of imprisonment if he received consecutive sentences—the guidelines would consider only the maximum possible punishment for the most serious offense. Moreover, the guidelines recognize that the offenses for which a defendant may be charged or convicted may vary from his actual conduct, and hence the commentary to § 7B1.1 specifies that the relevant factor to consider is the defendant's "actual conduct." § 7B1.1 comment (n.1). Accordingly, the defendant's "actual conduct"—rather than simply the maximum term of imprisonment to which he was exposed—determines the grade of his supervised release violation.

By analogy to the regular sentencing provisions of the guidelines, an offender's status is not an element of his conduct for the purpose of calculating his offense level. Chapters 2 and 3 of the guidelines grade the seriousness of an offense by assigning points for the offender's conduct and aggravating factors such as the victim's status. These conduct-related points are ranked along the vertical axis of the sentencing table. The offender's criminal history—including the offender's status as a repeat offender, an escapee, or a parolee—is ranked along the horizontal axis. The guidelines as a whole, therefore, do not include the offender's status as an element of his "conduct" when grading the severity of an offense. Instead, the offender's status is an element of his criminal history.

The supervised release revocation table, § 7B1.4(a), mirrors the structure of the guidelines as a whole. In § 7B1.4(a), the offender's grade of violation—the evaluation

of his conduct—is plotted along the vertical axis. The offender's criminal history is plotted along the horizontal axis. We assume that the Commission consistently used terms and concepts throughout the guidelines. Thus it did not intend to include the offender's status in the grade of violation under Chapter 7. Moreover, because the revocation table explicitly takes into account the offender's criminal history—and hence, his status— along the horizontal axis, the Commission did not intend to double-count the offender's status by incorporating status-related sentence enhancements into the grade of violation along the vertical axis.

■ For these reasons, we conclude that the actual conduct a district court may consider in determining the grade of a violation of supervised release pursuant to § 7B1.1(a) does not include sentence enhancements for habitual or recidivist offenders. In the present case, the district court considered Lee's enhanced sentence in determining that he had committed a Grade B violation. The court followed the probation officer's recommendation and sentenced Lee to a term of imprisonment squarely in the middle of the recommended range for a Grade B violation. Because we cannot say for certain that the able district judge would have given Lee the same 24-month sentence had he known that the correct range was only 8 to 14 months, we cannot affirm the sentence. For these reasons, we vacate Lee's sentence and remand his case for resentencing consistent with this opinion.

Finally, we granted a motion by Lee's counsel, Joseph A. Kaye, to withdraw as the attorney of record following oral argument on January 23, 1996. Mr. Kaye did a fine job on this case, but the district court must now appoint new counsel to represent Lee during his resentencing.

VACATED and REMANDED.