**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Montuelle WRIGHT, Defendant–
Appellant.**

No. 95–2447.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 12, 1995.

Decided Aug. 7, 1996.

James Porter, Ranley R. Killian, Jr., Stephen B. Clark (argued), Office of the U.S. Atty., Crim. Div., Fairview Heights, IL, for Plaintiff–Appellee.

Patrick W. Fitzgerald (argued), Alton, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and ESCHBACH and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

While Montuelle Wright was serving a five-year term of supervised release as part of his sentence for conspiracy to distribute cocaine and cocaine base, he allegedly committed several violations of the conditions of his release. As a result, on May 19, 1995, the United States Probation Office filed a petition for revocation of the supervised release. After a hearing on June 5, 1995, the district court found that Wright had indeed violated the conditions of his release and it returned him to prison for 44 months. Wright appeals, claiming that the district court's findings at the revocation proceeding were not supported by a preponderance of the evidence, and thus that he is entitled to resentencing. After reviewing the record carefully, we conclude that the record as it presently stands does not support the court's findings. We therefore remand for resentencing.

The government's revocation petition asserted that Wright had engaged in numerous acts that violated several conditions of his supervised release. First, the petition claimed that on two occasions he violated the condition requiring that he not violate any federal, state, or local laws. Specifically, it stated that Wright violated this condition (1) when he was arrested on February 11, 1995, by the East St. Louis Police and charged with possession with intent to distribute 23 grams of crack cocaine, and (2) more broadly, when he admitted to his probation officer on April 18, 1995, that he had been selling crack cocaine regularly since December 1994. Next, the petition charged that Wright violated the condition requiring him not to possess a firearm. When the police arrested him on February 11, 1995, they found a handgun in his car, which Wright claimed he had purchased earlier that week. Finally, the petition charged that he violated the condition requiring him not to use any narcotic or controlled substance, when he tested positive for cocaine on four occasions and marijuana on two occasions, in March and April 1995.

At the revocation hearing, the government presented the testimony of Probation Officer

Scott Schakett, Wright's supervising officer, that Wright had the 23 "rocks" of crack cocaine and a 9mm loaded firearm in his possession at the time of the February 11 arrest, and that the firearm had been stolen. Schakett also testified that Wright tested positive for cocaine and marijuana on several occasions (four times for cocaine, twice for marijuana). Finally, Schakett testified that Wright admitted that he had been selling drugs since he had been on supervised release, and he described one incident in which he and some other officers caught Wright flushing some crack cocaine down the toilet at his residence. Schakett did not explain how they ascertained that the substance was crack, and he admitted that it was never sent to the Drug Enforcement Administration or the Illinois State Police labs for testing. Indeed, on cross examination he admitted that "I do not have any positive findings that was crack cocaine." Also on cross examination, Schakett's lawyer brought out the fact that the probation office had not sought revocation of supervised release earlier (based, for instance, on the February 11 incident) because they were trying to get court permission to use him as a confidential informant.

Based on this record, the court found that Wright had committed several additional federal crimes: first, the possession of cocaine base on February 11, 1995; second, possession of a firearm; third, possession of cocaine on April 18, 1995; fourth, testing positive for cocaine on five (actually there were only four) occasions and for marijuana on two occasions; and fifth, failing to report his February 11 arrest. The court accordingly revoked Wright's supervised release. It found that Wright had repeatedly violated the conditions of his release in an egregious manner. It imposed a sentence of 44 months, which was at the upper end of the applicable range. On the formal judgment, it listed four distinct "Grade A" violations that Wright committed, together with the dates when they were committed, to support the range it selected.

■ The revocation of supervised release is governed both by statute, 18 U.S.C. § 3583(e)(3), and by policy statements promulgated by the Sentencing Commission, U.S.S.G. Ch. 7. Under § 3583, the court has the power to revoke supervised release upon finding "by a preponderance of the evidence that a person violated a condition of supervised release." The Sentencing Commission's policy statements prescribe a range of time of imprisonment based upon the defendant's criminal history category at the time of his original sentence and the grade of violation by the defendant. U.S.S.G. § 7B1.4(a). There are three grades of supervised release violations, ranging from Grade A (the most serious) to Grade C. Revocation of probation or supervised release is mandatory upon the finding of a Grade A or Grade B violation, U.S.S.G. § 7B1.3(a)(1), and discretionary for a Grade C violation, U.S.S.G. § 7B1.3(a)(2). Although these policy statements are not binding on the sentencing courts, we have held that they "are entitled to great weight ... and it would be an abuse of discretion for [the sentencing court] to ignore them." *United States v. Hill,* 48 F.3d 228, 230–31 (7th Cir.1995). The court here indicated its intention to follow the policy statements, and we too are guided by them in evaluating Wright's claims.

Wright has cast his claims on appeal in terms of the evidence to support the findings that the particular violations occurred. We therefore review the grounds on which the district court relied on that basis. In the final analysis, the consequences of either error or confusion in the factual basis for the revocation may be important, since many of the underlying violations suggested by this record appear to be Grade C violations rather than Grade A violations, and as noted above, revocation is discretionary for the former and mandatory for the latter.

■ The first listed violation states, "[t]he defendant has committed another federal, state, or local crime," and it lists February 11, 1995, as the date the violation occurred. The record shows that Wright was accused of two violations as a result of that arrest, one relating to the crack cocaine, and the other relating to the handgun. The record is unfortunately ambiguous with respect to the crack cocaine offense. The revocation petition itself charged Wright with possession of the crack cocaine with intent to distribute, and with actual distribution. However, at the revocation hearing the judge stated only

that he found that Wright had possessed the controlled substance on February 11, 1995 (and on April 18, 1995, which we discuss below). He made no finding about intent to distribute or actual distribution.

The difference is dispositive under the guidelines on the question whether Wright committed "a controlled substance offense" as § 7B1.1 uses the term. Application Note 3 to § 7B1.1 indicates that the definition of this offense is taken from § 4B1.2. Section 4B1.2(2), in turn, defines the term "controlled substance offense" as "an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) *or the possession of a controlled substance* (or a counterfeit substance) *with intent to manufacture, import, export, distribute, or dispense.*" (Emphasis added). Facts showing simple possession, however, would not justify the same treatment for revocation of supervised release as those showing intent to distribute. In the absence of a clear finding from the district court that Wright's offense went beyond simple possession on February 11, the record does not support the use of that offense to support the revocation as the court used it. Simple possession, we note, would have supported only a Grade C violation, while possession with intent to distribute would have supported a Grade A violation.

■ We have similar problems with the firearm offense committed on February 11. The first possibility is that the court meant to rely on § 7B1.1(a)(1)(A)(i), on the theory that the possession of the firearm was a "crime of violence." Again beginning with the Application Notes to § 7B1.1, Note 2 states that "crime of violence" is defined in § 4B1.2(1). Application Note 2 to § 4B1.2 explicitly states that "[t]he term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon." If the court meant instead to rely on § 7B1.1(a)(1)(A)(iii), possession of a firearm described in 26 U.S.C. § 5845(a), the problem is simple: the 9mm handgun that Wright possessed was not such a device. Finally, the maximum penalty for a violation of 18 U.S.C. § 922(g) (possession of a firearm by a felon) is ten years, not more than twenty as required by § 7B1.1(a)(1)(B). See 18 U.S.C.

§ 924(a)(2). Thus, it is possible (though not certain) that neither of the February 11 offenses on this record support the revocation decision.

The second listed violation overlaps somewhat with the first. It states that "the defendant possessed a firearm in violation of federal law and the terms of his supervised release," and gives February 11, 1995, as the date of the violation. We have already discussed the "violation of law" aspect of this charge. We cannot tell whether the court meant to count the violation of the terms of the supervised release as a separate violation here. That seems unlikely, given the fact that § 7B1.1(a)(3)(B) classifies violation of the terms of supervised release as a Grade C violation, not as the Grade A violation mentioned by the court.

■ Third, the judgment indicates that "the defendant has committed another federal, state, or local crime," and gives April 18, 1995, as the relevant date. Even the government concedes that the date was wrong, noting in its brief that the date either should have been May 25, 1995, or that the court was perhaps making a finding about Wright's admission concerning the distribution of cocaine. (Brief for Appellee at 9 n. 3.) April 18 is the date on which Wright had a conversation with his probation officer on the topic of his drug sales, but there is no evidence that he actually sold anything on that date (or any other particular date, on this record). Wright was never charged with any May 25 conduct, and thus never had the opportunity to defend himself against any such charge. We consider it inappropriate to change grounds at this late date on this kind of material point.

While it would be possible for us to ignore the specifics of the court's findings and rely directly on Wright's admission, we believe that it would be better in light of the other errors we have described to remand the case for the district court's reconsideration. The judge specifically stated that he chose a sentence that reflected Wright's egregious and repeated violations of the law and the conditions of his release. On a record that accurately reflects which violations actually were committed and how serious they were, the judge might exercise his discretion differently.

■ The last point in the list reflects Wright's failure to refrain from using narcotics or controlled substances, on four specific dates (which were the dates when he tested positive for drugs). Testing positive for drug use is not an independent crime; it is only a violation of the terms of his supervised release. We note again that these kinds of violations are classified as Grade C under § 7B1.1(a)(3).

Although we are remanding for resentencing, it is perfectly possible that the district judge may conclude again that Wright deserves a sentence at the high end of the permissible range. With an expanded record, it may appear that some of the violations were indeed Grade A violations. Even for Grade C violations, § 7B1.3(a)(2) gives the court the choice between revoking probation or supervised release, or extending the term, or modifying the conditions of supervision. For the reasons stated, we therefore VACATE the sentence and REMAND for re-sentencing in accordance with this opinion.