UNITED STATES of America,
Plaintiff–Appellee,

v.

Christopher BISSONETTE,
Defendant–Appellant.

No. 01–3622.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 18, 2002.

Decided Feb. 20, 2002.

Rebecca Frank Dallet, Joy Bertrand (argued), Office of the United States Attorney, Milwaukee, WI, for plaintiff-appellee.

Nancy Joseph (argued), Federal Defender Services of Eastern Wisconsin, Inc., Milwaukee, WI, for defendant-appellant.

Before MANION, ROVNER, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Christopher Bissonette argues that under the plain meaning of § 4B1.1 of the United States Sentencing Guidelines, he should not have been sentenced as a career offender—which shows the degree to which "plain meaning" is in the eye of the beholder.

When a bystander tried to stop a bar fight Bissonette was involved in, Bissonette pulled out a knife and stabbed the man, inflicting a one-inch stab wound to his abdomen. Because Bissonette is a Native American and the fight was in Keshena, Wisconsin, which is in the Menominee Indian Reservation, he was charged in federal court. He ultimately entered a guilty plea to assault with intent to do bodily harm without just cause or excuse, in violation of 18 U.S.C. §§ 113(a)(3) and 1153.

At sentencing, the probation department and the government agreed that Bissonette was a career offender; Bissonette, quite naturally, disagreed. After a postponement of the sentencing hearing so that the probation department could seek advice from the Sentencing Commission as to its interpretation of certain language in the United States Sentencing Guidelines,

Bissonette was sentenced, as a career offender, to 77 months imprisonment. He appeals his designation as a career offender.

The career offender guideline—§ 4B1.1—sets out three requirements which must be met before the guideline comes into play. The qualification relevant here is the third: "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." What qualifies as a felony is subject to further elucidation, elucidation provided in the relevant application note, where we learn that

> "Prior felony conviction" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed.

U.S.S.G. § 4B1.1, Application Note 1. Bissonette concedes that he has one prior felony conviction. But he argues that neither of his two prior battery convictions (one in 1990 and one in 1997) can be considered felonies. The batteries of which he was convicted were labeled misdemeanors under Wisconsin law and carried a maximum sentence of 9 months. But Bissonette was given an enhanced sentence under Wisconsin's habitual criminality statute, raising the maximum sentence on each battery to 3 years. See § 939.62 Wis. Stat. He was sentenced to 2 years imprisonment for each offense.

In Bissonette's eyes, the language in the application note means that these batteries are not felony convictions. The maximum sentence for a battery—without tacking on the habitual criminality enhancement—is 9 months. So, he says, battery is not an "offense punishable by . . . imprisonment for a term exceeding one year . . . regard-

less of the actual sentence imposed." U.S.S.G. § 4B1.1, Application Note 1. He contends that the sentence for the offense itself without regard to enhancements is the relevant consideration. His is a respectable argument. It is also similar to arguments previously made in sightly different contexts in the guidelines. These other arguments have at times prevailed, but, unfortunately for Bissonette, the latest word goes against him.

To be specific, § 4B1.1 contains another phrase which has caused a similar problem—"Offense Statutory Maximum." The issue as to that phrase was whether it means the maximum sentence in the statute under which a defendant was charged or that sentence plus any sentencing enhancements imposed. Some people saw it as clearly meaning the first; others the second.

The phrase itself was the Sentencing Commission's attempt to comply with Congress' directive in 28 U.S.C. § 994(h) to assure that the guidelines "specify a prison sentence 'at or near the maximum term authorized for categories of' adult offenders who commit their third felony drug offense or violent crime." *United States v. LaBonte*, 520 U.S. 751, 752, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997). To comply with that directive, the Sentencing Commission promulgated the "Career Offender Guideline" which referred to an "offense statutory maximum," which it defined "unhelpfully," using the Court's word, as "the maximum term of imprisonment authorized for the offense of conviction." No one knew whether the reference to the "maximum term authorized" in 28 U.S.C. § 994(h) and "the maximum term of imprisonment authorized for the offense of conviction" in the guidelines meant the basic statutory maximum for a particular offense—the base sentence—or whether they meant the base sentence plus rele-

vant statutory enhancements. The Courts of Appeals who considered the issue determined that the "offense statutory maximum" was the base sentence plus enhancers. *See LaBonte,* n. 2.

Apparently finding their plain meaning misinterpreted, the Sentencing Commission amended the Commentary to guideline § 4B1.1 to preclude consideration of enhancements in calculating the "offense statutory maximum." U.S.S.G. § App. C, amendment 506 (Nov.1994). In the inevitable cases resulting from the amendment, the Courts of Appeals for the First and Ninth Circuits found amendment 506 to be a reasonable implementation of § 994's directive for sentences at or near the authorized maximum term. The Courts of Appeals for five other circuits (ours included) found the amendment "at odds with the plain language of § 994(h)." *LaBonte,* at 756–57, 117 S.Ct. 1673. Putting a stop to the debate, in *LaBonte* the Court concluded that "maximum term authorized" requires a sentence at or near the maximum available "once all relevant statutory sentencing enhancements are taken into account." At 762. That particular meaning was plain to six of the nine Justices.

Bissonette brushes *LaBonte* aside by saying that it applies only to the statutory maximum for the offense of conviction, not to the predicate offenses, and he is concerned only with predicate offenses. That is true, but we have already extended the *LaBonte* approach to a situation analogous to the one here.

The guideline pertinent to violations of probation and supervised release contains language similar to that which we are examining—language which by now we must conclude is hardly plain at all. Section 7B1.1 classifies three grades of violations with increasingly severe penalties. The grade of a violation is determined by the "conduct constituting" any "federal, state,

or local offense punishable by" various terms of imprisonment. The question arose as to whether the "offense punishable" by a certain term referred to only the base offense sentence or to the base sentence plus enhancements. Prior to *LaBonte,* in *United States v. Lee,* 78 F.3d 1236, 1241 (7th Cir.1996), we concluded that the conduct a court may consider in determining the grade of a violation of supervised release under § 7B1.1 "does not include sentence enhancements for habitual or recidivist offenders." But with our understanding improved by *LaBonte,* we overruled *Lee* last year and said that sentence enhancements are to be included. We pointed out that the Supreme Court concluded that

> the term of punishment to which a person is exposed on violating a statute includes all enhancements—for quantity of drugs, for use of firearms, for violence during the offense, and for prior convictions.

*United States v. Trotter,* 270 F.3d 1150, 1155, 1156 (7th Cir.2001). We felt constrained to apply a similar approach to § 7B1.1.

Bissonette's argument is valiant and not without appeal. But it's not enough to win this appeal. Recent history shows that the language on which he relies is capable of more than one interpretation. But in the face of *LaBonte* and *Trotter,* we cannot impose a different interpretation to that language in this context from the meaning similar language has received in other contexts in the guidelines. Chief Judge Stadtmueller's interpretation of the guideline was correct, and the sentence he imposed is AFFIRMED.