UNITED STATES of America,
Plaintiff–Appellee,

v.

Donte L. STEWART, Defendant–
Appellant.

No. 03–4353.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 4, 2004.

Decided Aug. 18, 2004.

John K. Mehochko, Office of the United States Attorney, Rock Island, IL, for Plaintiff–Appellee.

George F. Taseff, Office of the Federal Public Defender, Peoria, IL, for Defendant–Appellant.

Before FLAUM, Chief Judge, BAUER, and SYKES, Circuit Judges.

## ORDER

Donte Stewart appeals the district court's revocation of his supervised release and imposition of a 27–month term of reimprisonment. The government's petition to revoke stems primarily from an incident at the Traveler Motel in Bettendorf, Iowa, on September 28, 2003. There the police discovered Stewart in a motel room with a female prostitute, a crack pipe, and a four-time convicted felon named Rob Dagit. Stewart struggled with police and attempted to flee the scene but was apprehended in the motel parking lot. Based on testimony from Dagit and the arresting officer, the district court concluded that Stewart had violated the terms of his supervised release by committing the new crimes of battery (in the scuffle with the police) and possession of crack with intent to distribute. On appeal Stewart argues that Dagit's testimony was unreliable and that the district court's sentence is unreasonable. Because the district court's assessment of Dagit's credibility is not clearly erroneous and Stewart's resulting sentence is not so harsh as to be plainly unreasonable, we affirm.

In 1996 Stewart pleaded guilty to possession of crack with intent to distribute. 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii). He was sentenced to 97 months in prison (later reduced to 73 months) and five years of supervised release. He began serving his supervised release in November 2001. In September 2003 Stewart consented to modification of supervision because of multiple violations of his conditions of release, including possession and use of alcohol, marijuana, and cocaine. He was ordered to serve four months of community confinement; before that confinement term began, the government petitioned to revoke his supervised release, alleging that Stewart had committed the additional violations of "pimping" and fleeing from police. In a supplemental petition, the government further alleged that Stewart had sold crack to Dagit on as many as 13 occasions, possessed crack with the intent to sell it to Dagit on September 28, had sex with a prostitute, and associated with a convicted felon.

At the hearing on the government's petition, Stewart's counsel told the district court that the parties had reached a tentative agreement: Stewart would admit resisting a police officer, a Grade C violation, and the government would recommend 12 months' detention (eight months' imprisonment plus the still-unserved four months in a halfway house) and three years of supervised release. However, when the district court questioned Stewart about the resisting-an-officer violation, Stewart denied that he had been attempting to avoid arrest, prompting the district court to move directly to a hearing on all of the allegations in the petition.

Dagit testified that he bought crack from Stewart on September 28 and approximately three other occasions, including September 27. He testified that he and Stewart had gone to the Traveler Motel in Bettendorf on September 27 and were there again on the evening of September 28 "smoking crack and partying." Dagit testified that earlier on September 28 he had asked Stewart to sell him $100 worth of crack. He also asked Stewart to find a "lady who wanted to party." That night Stewart brought a prostitute with him when he joined Dagit at the motel. Dagit paid her $200 to have sex with both him and Stewart but got a $100 refund because Stewart wasn't interested in having sex with her. The district court questioned Dagit to clarify the number and dates of the crack buys from Stewart. Dagit answered in the affirmative when the court asked him to confirm that he bought crack from Stewart on September

28 and "three other times," including "the day before on the 27th."

Bettendorf Police Officer Jeremy Salisbury testified that while patrolling the motel parking lot at about 10:30 p.m. on September 28, he ran a check on the license plates of a Toyota 4–Runner and determined that it was registered to Stewart, who had an outstanding warrant. Salisbury then checked with the motel desk clerk to locate Stewart's room and called for backup. While Salisbury and a backup officer were standing outside Stewart's room waiting for a third officer, the door opened and the prostitute started to leave. Salisbury and his partner entered the room, saw a crack pipe on the table, and ordered everyone to sit down. Dagit then reached for the crack pipe. Salisbury grabbed him by the shoulder and forced him back into a seated position. Meanwhile, Stewart made a break for the door. Salisbury and his partner attempted to stop him, there was a struggle, and Stewart wrestled free, leaving Salisbury "with a handful of shirt."

Officer Salisbury caught up with Stewart in the motel parking lot, arrested him, and returned to the motel room. Dagit was still sitting on the bed but the prostitute was gone, and so was the crack pipe. Although the officers later located the prostitute, they never found the crack pipe. They also did not find any drugs on Stewart, Dagit, or the prostitute; nor did they find any evidence of drug packaging except a piece of plastic on the floor, which was not seized because it had no drug residue on it. When searched, Stewart and the prostitute each had a $100 bill.

On cross-examination Stewart's counsel highlighted a number of problems with Dagit and his testimony. Dagit admitted that he is bipolar, takes several powerful medications for the disorder, and receives Social Security disability benefits. Con-

victed of multiple felonies, Dagit stood to lose his benefits if convicted of another crime. Dagit also conceded that when he binges on crack, he stops taking his medication, and that his cognitive ability may be impaired by his crack use.

Counsel also elicited several inconsistencies between Dagit's and Officer Salisbury's version of events. Dagit denied ever reaching for the crack pipe or being restrained by the officer. Dagit also claimed that the police arrived at the motel room in the "early evening" as opposed to about 10:30 p.m. as Salisbury testified. Salisbury testified that the desk clerk had told him that she saw Stewart, Dagit, and the prostitute together; Dagit testified that the three had never walked past the desk clerk together.

The district court concluded that the government had established by a preponderance of the evidence that Stewart sold crack to Dagit twice—on September 27 and 28. The court also found that Stewart had pushed the police officer in attempting to flee, committing a battery as alleged in paragraph 3.D. of the supplemental petition. Acknowledging that Dagit's testimony was problematic in some respects, the district court "believed in the basic credibility of his testimony." The Grade A violation of selling crack, see U.S.S.G. § 7B1.1, combined with Stewart's criminal history category of II and underlying Class A felony resulted in a recommended guideline range of 27 to 33 months' reimprisonment. The district court imposed 27 months in prison (in addition to the four outstanding months of community confinement) and three years of supervised release.

On appeal Stewart does not challenge the district court's conclusion regarding the battery to the police officer, but argues that there is insufficient evidence to support the district court's finding that he

sold crack to Dagit. He asserts that there is no evidence of a crack sale on September 27 and that Dagit's testimony is so inherently suspect and unreliable that no deference is owed to the district court's conclusion regarding the crack sale on September 28.

We review the district court's decision to revoke supervised release for abuse of discretion. *United States v. Young*, 41 F.3d 1184, 1186 (7th Cir.1994). Supervised release violations must be proven by a preponderance of the evidence. *See* 18 U.S.C. § 3583(e)(3); *United States v. Trotter*, 270 F.3d 1150, 1153 (7th Cir.2001). The district court's factual findings are reviewed for clear error. *Trotter*, 270 F.3d at 1153.

■ Although somewhat thin, there is evidence in the record that Stewart sold crack to Dagit on September 27. Dagit testified that in addition to the crack he bought from Stewart on September 28, he had purchased crack from Stewart on approximately three other occasions. When the district court asked specifically if one of those occasions was the day before, September 27, Dagit answered "yes." The district court concluded that notwithstanding Dagit's credibility problems, his testimony about the crack sale on September 27 was sufficient under the preponderance of the evidence standard. There is nothing "exceedingly improbable" about Dagit's assertion that he bought crack from Stewart on September 27; therefore, the district court did not clearly err by concluding as much. *See United States v. Robinson*, 314 F.3d 905, 907 (7th Cir.2003).

Similarly, the district court's finding that Stewart sold crack to Dagit on September 28 is not clearly erroneous. Stewart argues primarily that Dagit's uncorroborated testimony is unbelievable because he is a "manic-depressive, drug addicted, four-time convicted felon" who had every incentive to falsely accuse Stewart of selling him crack so as to avoid having his own disability benefits terminated. Even so, the district court was entitled to conclude, as it did, that his testimony about the crack purchases was credible. *See United States v. Galbraith*, 200 F.3d 1006, 1012 (7th Cir.2000); *see also United States v. Garcia*, 66 F.3d 851, 857 (7th Cir.1995) (district court may credit uncorroborated testimony of convicted felon and government informant); *United States v. Cedano–Rojas*, 999 F.2d 1175, 1180 (7th Cir. 1993) (testimony of one biased witness adequate to support a finding of fact). Also, the minor discrepancies between Officer Salisbury's and Dagit's testimony do not demonstrate that the district court clearly erred. The court noted the inconsistencies but acceptably concluded that they were not particularly significant. *See, e.g., United States v. Huebner*, 356 F.3d 807, 813 (7th Cir.2004) (discrepancies in testimony do not render it incredible).

■ Finally, Stewart challenges his 27–month term of reimprisonment. We review a sentence imposed following the revocation of supervised release only to determine whether it is "plainly unreasonable." *United States v. Salinas*, 365 F.3d 582, 588 (7th Cir.2004).

The Sentencing Commission has promulgated nonbinding policy statements regarding the revocation of supervised release, which include recommended ranges of imprisonment derived from the grade of the supervised release violation and the defendant's criminal history at the time of his original sentence. *See* U.S.S.G. § 7B1.4(a). Additionally, 18 U.S.C. § 3583(e) provides a statutory maximum term of reimprisonment upon revocation, and 18 U.S.C. § 3553(a) sets forth sentencing factors—such as the nature and seriousness of the offense, the defendant's history, and the need to deter future crime and protect the public—that the district

court considers when selecting a term of reimprisonment.

With a criminal history category II, a Grade A violation, *see* U.S.S.G. § 7B1.1(a)(1) (Grade A violations include any controlled substance offense punishable by more than one year imprisonment), and an underlying Class A felony offense, Stewart's guideline range was 27 to 33 months. U.S.S.G. § 7B1.4(a)(2). He faced a statutory maximum of five years' reimprisonment, 18 U.S.C. § 3583(e)(3), and the district court's finding that he possessed a controlled substance made revocation of supervised release mandatory, *id.* at 3583(g)(1).

The district court considered the factors set forth in § 3553(a), noting that while Stewart exhibited promise at the beginning of his supervised release term, the prior modification of his conditions of release (resulting from alcohol and drug violations) and the seriousness of his return to selling crack warranted 27 months' reimprisonment. The court's sentence is not plainly unreasonable—it is at the low end of the recommended guideline range and the court considered the appropriate factors when imposing it. *See, e.g., Salinas,* 365 F.3d at 589 (term of imprisonment well above guideline range not plainly unreasonable when record revealed that district court considered factors in § 3553(a)).

The judgment of the district court is AFFIRMED.