UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 1, 2006
Decided November 2, 2006

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 06-2196

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 90-CR-30014 |
| JAMES R. INGRAM, *Defendant-Appellant.* | Jeanne E. Scott, *Judge.* |

## O R D E R

James Ingram was convicted in 1990 for possessing a firearm after a felony conviction. *See* 18 U.S.C. § 922(g)(1) (1998). He was sentenced as an Armed Career Criminal to 15 years' imprisonment and 60 months' supervised release with the condition that he not commit any local, state, or federal crime. *See id.* §§ 924(e)(1), 3583(b) (1988). Ingram's term of supervision commenced in April 2003, and in March 2006 his probation officer petitioned for the revocation of his supervised release based on allegations that he assaulted Rhonda Martinie and brandished a handgun. After holding an evidentiary hearing, the district court revoked Ingram's supervised release and imposed a term of 60 months' reimprisonment. Ingram filed a notice of appeal, but his appointed counsel moves to withdraw on the basis that he cannot discern a nonfrivolous basis for appeal. *See Anders v. California*, 386 U.S. 738 (1967). Ingram has not accepted our invitation to respond to counsel's submission, *see* Cir. R. 51(b), so our examination is confined to only those potential

issues identified in counsel's facially adequate brief, *see United States v. Tabb*, 125 F.3d 583, 584 (7th Cir. 1997) (per curiam).

At Ingram's revocation hearing, the government presented Martinie's testimony. She recounted that Ingram became angry with her, forced her down to the floor, and struck her head repeatedly. After assaulting Martinie, Ingram retrieved a gun from beneath his mattress, pointed it first at her, and then pointed the gun into his own mouth and threatened to commit suicide. Ingram then threatened to kill Martinie if she reported the incident to the police. Martinie stated that she took the threat seriously, but nonetheless reported the incident to the police and sought treatment at the local hospital for a black eye and concussion.

The government also presented the testimony of Sergeant Greenslate of the Lincoln, Illinois police department, and ATF Special Agent Hobbes. Greenslate testified that Martinie reported to him the details surrounding Ingram's attack, and informed him that Ingram kept a handgun hidden beneath a mattress in his residence. Based on this information, Greenslate stated that he obtained a search warrant for Ingram's residence, a search of which revealed a handgun hidden under Ingram's mattress. Hobbes then testified and confirmed that the handgun found at Ingram's residence was manufactured in Brazil.

Based on this testimony, the district court determined that "there was an abundance of evidence showing that Ingram had violated the terms of his supervised release by committing aggravated battery and unlawfully possessing a weapon," and accordingly revoked his supervised release. The court then determined that Ingram's violations met the Grade A classification under the Guidelines Policy Statements. *See* U.S.S.G. §§ 7B1.1(a)(1), 7B1.4(a). Combining this classification with Ingram's Criminal History Category of VI yielded a Guidelines Policy Statement range of 51 to 60 months' imprisonment. *See id.* § 7B1.4(a). The court declined to credit Ingram the time he spent on supervised release before the revocation, and imposed a term of 60 months' imprisonment with no additional term of supervised release.

In his *Anders* submission counsel identifies five potential arguments that Ingram could make on appeal, and correctly concludes that each would be frivolous. First, counsel suggests that Ingram could argue that the revocation of supervised release was invalid because the petition for revocation was filed by his probation officer rather than a United States Attorney. But this argument would directly contradict the statutory mandate that probation officers not only are permitted, but in fact are required, to "immediately report any violation of the conditions of release to the court." 18 U.S.C. § 3603(8)(B) (2000); *see also* U.S.S.G. § 7B1.2(a) ("The probation officer *shall* promptly report to the court any alleged Grade A or B violation." (emphasis added)); *United States v. Davis*, 151 F.3d 1304, 1307-08 (10th

Cir. 1998).  It thus would be frivolous to argue that the revocation of Ingram's supervised release is invalid simply because a probation officer petitioned for revocation.

Counsel next examines whether Ingram could argue that the evidence was insufficient to sustain the revocation of supervised release.  A district court need only find by a preponderance of the evidence that an individual violated a condition of supervised release.  *See* 18 U.S.C. § 3583(e)(3) (2000 & Supp. IV 2004); *United States v. Trotter*, 270 F.3d 1150, 1153 (7th Cir. 2001).  Under Illinois law, a person commits aggravated battery when he "intentionally or knowingly" without legal justification and by any means "causes great bodily harm" to an individual.  *See* 720 Ill. Comp. Stat. 5/12-3, 5/12-4.  Here the district court heard Martinie testify that Ingram repeatedly struck her to the point that she suffered a black eye and concussion.  *See People v. Morgan*,  378 N.E.2d 1298, 1302 (Ill. App. Ct. 1978) (holding that a concussion constitutes "great bodily harm" encompassed by aggravated-battery statute).  And Sergeant Greenslate testified that he located Ingram's firearm exactly where Martinie said it would be hidden.  This evidence easily shows by a preponderance that Ingram committed aggravated battery and possessed a firearm after a felony conviction, and any contrary argument thus would be frivolous.

The third potential argument counsel identifies is whether Ingram could raise an *ex post facto* challenge to the district court's imposition of the term of reimprisonment.  To prevail on an *ex post facto* claim, Ingram would have to show that the new term of imprisonment exceeds what the law provided when he committed the § 922(g) offense that led to his conviction in 1990.  *See Johnson v. United States*, 529 U.S. 694, 699 (2000).  Ingram committed a class A felony in 1990, *see* 18 U.S.C. §§ 924(e), 3559(a)(1) (1988), and federal law at that time authorized district courts to revoke the supervised release of an individual convicted of a Class A felony and "require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision," *see id*. § 3583(e)(3) (1988).  Here, the district court did exactly that.  It declined to credit Ingram for any time he spent on supervised release and imposed a term of reimprisonment that equaled the term of supervised release: 60 months.  Since Ingram's term of reimprisonment is not longer than what the law allowed when he committed his original offense, it would be frivolous to raise an *ex post facto* claim on appeal.  *See Johnson*, 529 U.S. at 699.

Counsel next contemplates whether Ingram could challenge the district court's determination that his crimes were Grade A violations when calculating the Guidelines Policy Statement range.  As pertinent here, a Grade A violation is "a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . is a crime of violence, or . . . any other federal, state, or local offense

punishable by a term of imprisonment exceeding twenty years." *See* U.S.S.G. § 7B1.1(a)(1)(A)(i), (B). Counsel suggests Ingram could argue that, because the district court did not specifically state that he violated 18 U.S.C. § 922(g), the court in fact found that he violated the Illinois law prohibiting felons from possessing a firearm, *see* 720 Ill. Comp. Stat. 5/24-1.1(a). Because a violation of the Illinois provision is neither a "crime of violence" nor punishable by a maximum penalty greater than 20 years, *see id.* 5/24-1.1(e), the district court would have erred by deeming Ingram's crime a Class A violation if the conduct violated only state law. But counsel is correct to conclude that this argument would be frivolous. We could reasonably infer that the court referred to § 922(g) when stating that Ingram "unlawfully possessed a weapon" because Special Agent Hobbes testified that Ingram's handgun was manufactured in Brazil, and because § 922(g) encompasses firearms placed in interstate commerce while the Illinois analog does not. *Compare* 18 U.S.C. § 922(g) (2000), *with* 720 Ill. Comp. Stat. 5/24-1.1(a). And since Ingram is an Armed Career Criminal, a violation of § 922(g) carries a maximum penalty greater than 20 years. *See* 18 U.S.C. § 924(e) (2000 & Supp. IV 2004). Counsel also suggests that Ingram could challenge the district court's finding that aggravated battery is a Grade A violation, but likewise correctly concludes that the argument would be frivolous because aggravated battery is a felony "crime of violence" that is punishable by a term of imprisonment of more than one year. *See* 720 Ill. Comp. Stat. 5/2-7, 5/12-4(e); *see also United States v. Thigpen*, 456 F.3d 766, 770 (7th Cir. 2006) ("[U]nder Illinois law, aggravated battery involves the use or threatened use of force against another person and is punishable by imprisonment for more than a year. This crime also meets the requirements for a crime of violence." (citation omitted)).

Finally, counsel suggests that Ingram could challenge his term of reimprisonment on reasonableness grounds. When imposing a term of reimprisonment for violating supervised release, a district court must consider the applicable policy statements and the sentencing factors in 18 U.S.C. § 3553(a). *See United States v. Carter*, 408 F.3d 852, 854 (7th Cir. 2005); *United States v. Salinas*, 365 F.3d 582, 588-89 (7th Cir. 2004). The district court did all of this at Ingram's revocation hearing. The court noted the range recommended by the policy statements. It also discussed the severe physical harm and emotional and psychological stress that Ingram inflicted upon Martinie, *see* 18 U.S.C. § 3553(a)(1), (2)(A) (2000), and expressed its belief that the public needs to be protected from Ingram and his violent tendencies, *see id.* § 3553(a)(2)(C) (2000). As counsel points out, the district court did not state that punishment for Ingram's criminal conduct was the primary factor underlying the sentence, *see United States v. Miqbel*, 444 F.3d 1173, 1182 (9th Cir. 2006), and counsel is unable to identify any other factors that would have compelled a shorter term of reimprisonment.

The motion to withdraw is GRANTED, and the appeal is DISMISSED.