In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3622

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHRISTOPHER BISSONETTE,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01-CR-92--J.P. Stadtmueller, Chief Judge.

Argued January 18, 2002--Decided February 20, 2002

Before MANION, ROVNER, and EVANS, Circuit
Judges.

EVANS, Circuit Judge.  Christopher
Bissonette argues that under the plain
meaning of sec.4B1.1 of the United States
Sentencing Guidelines, he should not have
been sentenced as a career offender--
which shows the degree to which "plain
meaning" is in the eye of the beholder.

When a bystander tried to stop a bar
fight Bissonette was involved in,
Bissonette pulled out a knife and stabbed
the man, inflicting a one-inch stab wound
to his abdomen. Because Bissonette is a
Native American and the fight was in
Keshena, Wisconsin, which is in the
Menominee Indian Reservation, he was
charged in federal court. He ultimately
entered a guilty plea to assault with
intent to do bodily harm without just
cause or excuse, in violation of 18
U.S.C. sec.sec. 113(a)(3) and 1153.

At sentencing, the probation department
and the government agreed that Bissonette
was a career offender; Bissonette, quite
naturally, disagreed. After a
postponement of the sentencing hearing so
that the probation department could seek
advice from the Sentencing Commission as
to its interpretation of certain language
in the United States Sentencing
Guidelines, Bissonette was sentenced, as

a career offender, to 77 months imprisonment. He appeals his designation as a career offender.

The career offender guideline--sec.4B1.1--sets out three requirements which must be met before the guideline comes into play. The qualification relevant here is the third:  "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." What qualifies as a felony is subject to further elucidation, elucidation provided in the relevant application note, where we learn that

"Prior felony conviction" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed.

U.S.S.G. sec.4B1.1, Application Note 1. Bissonette concedes that he has one prior felony conviction. But he argues that neither of his two prior battery convictions (one in 1990 and one in 1997) can be considered felonies. The batteries of which he was convicted were labeled misdemeanors under Wisconsin law and carried a maximum sentence of 9 months. But Bissonette was given an enhanced sentence under Wisconsin's habitual criminality statute, raising the maximum sentence on each battery to 3 years. See sec.939.62 Wis. Stat. He was sentenced to 2 years imprisonment for each offense.

In Bissonette's eyes, the language in the application note means that these batteries are not felony convictions. The maximum sentence for a battery--without tacking on the habitual criminality enhancement--is 9 months. So, he says, battery is not an "offense punishable by . . . imprisonment for a term exceeding one year . . . regardless of the actual sentence imposed." U.S.S.G. sec.4B1.1, Application Note 1. He contends that the sentence for the offense itself without regard to enhancements is the relevant consideration. His is a respectable argument. It is also similar to arguments previously made in sightly different contexts in the guidelines. These other arguments have at times prevailed, but,

unfortunately for Bissonette, the latest word goes against him.

To be specific, sec.4B1.1 contains another phrase which has caused a similar problem--"Offense Statutory Maximum." The issue as to that phrase was whether it means the maximum sentence in the statute under which a defendant was charged or that sentence plus any sentencing enhancements imposed. Some people saw it as clearly meaning the first; others the second.

The phrase itself was the Sentencing Commission's attempt to comply with Congress' directive in 28 U.S.C. sec.994(h) to assure that the guidelines "specify a prison sentence 'at or near the maximum term authorized for categories of' adult offenders who commit their third felony drug offense or violent crime." United States v. LaBonte, 520 U.S. 751, 752 (1997). To comply with that directive, the Sentencing Commission promulgated the "Career Offender Guideline" which referred to an "offense statutory maximum," which it defined "unhelpfully," using the Court's word, as "the maximum term of imprisonment authorized for the offense of conviction." No one knew whether the reference to the "maximum term authorized" in 28 U.S.C. sec.994(h) and "the maximum term of imprisonment authorized for the offense of conviction" in the guidelines meant the basic statutory maximum for a particular offense--the base sentence--or whether they meant the base sentence plus relevant statutory enhancements. The Courts of Appeals who considered the issue determined that the "offense statutory maximum" was the base sentence plus enhancers. See LaBonte, n.2.

Apparently finding their plain meaning misinterpreted, the Sentencing Commission amended the Commentary to guideline sec.4B1.1 to preclude consideration of enhancements in calculating the "offense statutory maximum." U.S.S.G. sec. App. C, amendment 506 (Nov. 1994). In the inevitable cases resulting from the amendment, the Courts of Appeals for the First and Ninth Circuits found amendment 506 to be a reasonable implementation of sec. 994's directive for sentences at or near the authorized maximum term. The Courts of Appeals for five other circuits

(ours included) found the amendment "at odds with the plain language of sec. 994(h)." LaBonte, at 756-57. Putting a stop to the debate, in LaBonte the Court concluded that "maximum term authorized" requires a sentence at or near the maximum available "once all relevant statutory sentencing enhancements are taken into account." At 762. That particular meaning was plain to six of the nine Justices.

Bissonette brushes LaBonte aside by saying that it applies only to the statutory maximum for the offense of con viction, not to the predicate offenses, and he is concerned only with predicate offenses. That is true, but we have already extended the LaBonte approach to a situation analogous to the one here.

The guideline pertinent to violations of probation and supervised release contains language similar to that which we are examining--language which by now we must conclude is hardly plain at all. Section 7B1.1 classifies three grades of violations with increasingly severe penalties. The grade of a violation is determined by the "conduct constituting" any "federal, state, or local offense punishable by" various terms of imprisonment. The question arose as to whether the "offense punishable" by a certain term referred to only the base offense sentence or to the base sentence plus enhancements. Prior to LaBonte, in United States v. Lee, 78 F.3d 1236, 1241 (7th Cir. 1996), we concluded that the conduct a court may consider in determining the grade of a violation of supervised release under sec.7B1.1 "does not include sentence enhancements for habitual or recidivist offenders." But with our understanding improved by LaBonte, we overruled Lee last year and said that sentence enhancements are to be included. We pointed out that the Supreme Court concluded that

the term of punishment to which a person is exposed on violating a statute includes all enhancements--for quantity of drugs, for use of firearms, for violence during the offense, and for prior convictions.

United States v. Trotter, 270 F.3d 1150, 1155, 1156 (7th Cir. 2001). We felt constrained to apply a similar approach

to sec.7B1.1.

Bissonette's argument is valiant and not without appeal. But it's not enough to win this appeal. Recent history shows that the language on which he relies is capable of more than one interpretation. But in the face of LaBonte and Trotter, we cannot impose a different interpretation to that language in this context from the meaning similar language has received in other contexts in the guidelines. Chief Judge Stadtmueller's interpretation of the guideline was correct, and the sentence he imposed is AFFIRMED.