# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

Nos. 02-4008, 02-4102 & 02-4142

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JUAN SALINAS,

*Defendant-Appellant.*

———————

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 94-CR-042-S-01—**John C. Shabaz**, *Judge.*

———————

ARGUED MAY 13, 2003—DECIDED APRIL 26, 2004

———————

Before ROVNER, DIANE P. WOOD, and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* The district court revoked Juan Salinas's supervised release and ordered him to serve a prison term of 24 months after he violated the terms of his release on multiple occasions. Salinas appeals, contending that the court's sentencing decision was tainted by an error in a violation report and that the 24-month sentence was plainly unreasonable. We affirm.

## I.

Following his 1994 conviction for narcotics conspiracy, *see* 21 U.S.C. §§ 846 & 841(a)(1), the district court ordered

Salinas incarcerated for a period of 54 months. Upon his release from prison in 1998, Salinas began a five-year period of supervised release in the Southern District of Texas. Standard conditions of his release required, *inter alia*, that Salinas refrain from committing any new local, state, or federal offenses, follow the instructions of his supervising probation officer ("Condition #3"), and notify his probation officer within 72 hours of being arrested or questioned by a law enforcement officer ("Condition #11"). R. 187 at 3, 4. Salinas's violations of these conditions led the district court first to modify the terms of his supervised release and ultimately to revoke it.

The district court modified Salinas's release on three separate occasions in 2000 and 2001. First, on March 13, 2000, the court ordered that Salinas participate in a domestic violence counseling program after he was convicted of assaulting his wife. Second, on August 31, 2001, the court ordered Salinas to spend 120 days in home confinement with electronic monitoring following his failure to timely notify his parole officer of his contact with a police officer and his failure to obtain permission to travel outside of his supervising district (the Southern District of Texas). Third, on November 19, 2001, the court ordered Salinas to spend 120 days in a community corrections center after he violated the restrictions of his court-ordered home confinement by failing to return to his residence at the hour required by his curfew.

Unfortunately, these modifications did not succeed in bringing Salinas into compliance with the terms of his supervised release. On May 21, 2002, Salinas's probation officer instructed him to have no contact with Marisela Gomez-Barranco ("Barranco"), whom he had dated earlier that year, after Barranco made a number of complaints to local police that Salinas was harassing and possibly stalking her. Condition #3 of Salinas's release, as we have noted, required Salinas to follow his probation officer's instruc-

tions. Nonetheless, Salinas violated that condition on three occasions from June 19, 2002 to June 24, 2002 when he had contact with Barranco—once at a nightclub in McAllen, Texas and twice at her home in Mission, Texas. Following the third of these incidents, Salinas was contacted by Mission Police Officer J. Deleon and issued a criminal trespass warning. He did not report this contact to his probation officer within 72 hours as required by Condition #11 of his release.

In view of Salinas's ongoing failure to comply with the terms of his release, the probation office filed a probation violation report and a supplemental violation report in support of a request that Salinas be arrested and returned to court to show cause why his release should not be revoked. Two aspects of these reports deserve mention. First, the supplemental report erroneously represented that the district court "ha[d] modified Salinas' supervised release on three occasions as a result of his assaultive behavior." R. 270 at 2. In fact, only the first modification had involved that type of behavior. Second, the reports suggest that two of the prohibited encounters between Salinas and Barranco involved violent behavior. The original report indicates that when Salinas had contact with Barranco on June 19, 2002, he grabbed and pulled her in an attempt to restrain her, causing Barranco to sustain bruising on her arm and leg and swelling around her wrist that were later visible to the investigating police officer. R. 269, attachment (Petition for Warrant or Summons for Offender Under Supervision) at 3 (No. 1D). The supplemental report describes another incident that took place on August 16, 2002 at a restaurant in McAllen. According to the report, Salinas approached Barranco and her husband, Juan Ginez ("Ginez"), at the restaurant and a fight ensued between Salinas and Ginez. When Barranco attempted to intervene by placing herself between the two, Salinas allegedly struck her on the right side of her head with a closed fist. R. 270 at 1. Salinas did not stipulate to the August 16 incident, and although he did

stipulate to his contact with Barranco on June 19, he did not stipulate that Barranco was injured as a result of that contact.

Salinas was taken into custody and returned to the Western District of Wisconsin, where he ultimately entered into a written stipulation with the government acknowledging that he had had prohibited contact with Barranco on three occasions and that he had failed to report his contact with a police officer within 72 hours. R. 282 at 1-2. For its part, the government agreed that it would recommend to the court that it revoke Salinas's supervised release, sentence him to a prison term within the range recommended by the Sentencing Guidelines, and terminate further supervision. *Id.* at 2. The Guidelines designate the type of release violations to which Salinas had stipulated Grade C, the least serious of three categories. *See* U.S.S.G. § 7B1.1(a)(3)(B), p.s. That designation, coupled with Salinas's Category I criminal history, produced a recommended sentencing range of three to nine months in prison—the shortest recommended prison term included in the Guidelines' Revocation Table. *Id.* § 7B1.4(a), p.s.[1] Salinas expressly acknowledged in his stipulation that the district court would not be bound by the government's recommendation to sentence him within this range. R. 282 at 2. The district court was authorized by statute to impose a sentence of up to 36 months, given that his underlying conviction was for a Class B felony, *see* 18 U.S.C. §

---

[1] When a defendant has committed Grade C release violations, the district court may extend the term of his release and/or modify the conditions of his supervision, or alternatively the court may revoke his supervised release and sentence him to a period of incarceration. *See* U.S.S.G. § 7B1.3(a)(2), p.s. There is no dispute here that the district court acted within its discretion to revoke Salinas's release and order him imprisoned rather than extending the term of his release and/or again modifying the terms of his supervision.

3583(e)(3), and Salinas would later acknowledge this maximum when he appeared before the court. R. 280 at 3.

At the conclusion of a revocation and sentencing hearing on October 28, 2002, the district court (Hon. John C. Shabaz) revoked Salinas's release and ordered him to serve a two-year prison term to be followed by one year of supervised release. R. 280 at 11, 13. The court explained that its sentence "takes into account the defendant's repeated violations of not allowing—not following the instructions of the supervising probation officer and not reporting contacts with law enforcement within 72 hours," as well as his "continual history of committing violent acts against women." *Id.* at 11. As special conditions of the release that would follow his incarceration, Salinas was to undergo a mental health assessment and counseling "to address his propensity to stalk and assault women" and to spend 90 to 120 days in a community corrections center during which time he was to participate in a mental health program. *Id.* at 12-13. On the day following the hearing, the court issued a written order memorializing its revocation and sentencing decision and reiterating its reasons for sentencing Salinas as it had. R. 265. That order was docketed on October 30, 2002.

## II.

We begin with a few words about our jurisdiction. Salinas has filed three notices of appeal, which this court consolidated at his request. He filed the first of these (No. 02-4008) on November 8, 2002, within ten days of the date that the written order revoking his supervised release and imposing a sentence was docketed. R. 267. That timely appeal supplies us with jurisdiction to review the revocation and sentencing order. On November 5, 2002, Salinas filed a motion in the district court seeking to correct or reduce his

sentence pursuant to then-Rule 35(c) of the Federal Rules of Criminal Procedure. That provision, now found in Rule 35(a), allows a district court seven days in which to correct a sentence that was imposed as a result of "arithmetical, technical or other clear error." *See* Fed. R. Civ P. 35(a). The district court functionally denied Salinas's motion by not acting on it within seven days of the date that its revocation and sentencing order was entered on the docket, i.e., by November 7, 2002. *See United States v. Wisch*, 275 F.3d 620, 626 (7th Cir. 2001). On November 22, 2002, Salinas filed a second notice of appeal (No. 02-4102) challenging the functional denial of his Rule 35 motion. R. 275. However, that appeal, as Salinas now concedes, was untimely. Salinas Reply Br. at 1. We therefore dismiss that appeal. On November 26, 2002, the district court issued an order noting that the time during which it could correct Salinas's sentence had expired and denying the motion for lack of jurisdiction, and that order was entered on the docket the following day. R. 277. Salinas filed his third notice of appeal (No. 02-4142) on December 2, 2002, seeking review of that order. R. 278. That appeal was timely filed. However, Salinas concedes that the district court lacked the power to correct his sentence as of November 26 and that it correctly denied his motion for lack of jurisdiction at that point. Salinas Reply Br. at 1; *see United States v. Goode*, 342 F.3d 741, 743 (7th Cir. 2003). Accordingly we dismiss that appeal as well and turn to the merits of his appeal of the district court's revocation and sentencing order.

**A.**

We consider first whether, as Salinas contends, the error in the supplemental violation report regarding the rationale for the prior modifications of his release warrants a remand to the district court for reconsideration. Salinas complains that Judge Shabaz improperly relied on the report's asser-

tion that the court "ha[d] modified Salinas' supervised release on three occasions as a result of his assaultive behavior." R. 270 at 2. As indicated above, only the first modification actually involved "assaultive behavior." When errors of this nature are alleged to have affected the defendant's sentence, we review the lower court record to determine whether the district court actually relied on the inaccurate information in sentencing the defendant. *See United States v. Tucker*, 404 U.S. 443, 447, 92 S. Ct. 589, 591-92 (1972); *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003). "A sentencing court demonstrates actual reliance on misinformation when the court gives 'explicit attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence." *Id.*, quoting *Tucker*, 404 U.S. at 444, 447, 92 S. Ct. at 590, 592.

After reviewing the record, we are confident that the inaccuracy in the supplemental violation report played no role whatsoever in the district court's sentencing decision. Neither in its oral remarks at the revocation and sentencing hearing nor in its written order did the court give any indication that it was laboring under any misapprehension of the reasons for the modifications it had made to the terms of Salinas's release. To the contrary, the court accurately summarized its reasons for each of the prior modifications to the terms of Salinas's release both in its oral remarks and in its written order. R. 280 at 5-6; R. 265 at 2.

True, the court did remark that its sentence took into account that Salinas has a "continual history of committing violent acts against women." R. 280 at 11; *see also* R. 265 at 5. Salinas seizes upon that remark as a signal that the court may have been misled by the violation report's erroneous assertion regarding his "assaultive behavior." But we do not read the remark in that way. Wholly apart from the report's mistake about the prior modifications to the

terms of Salinas's release, there was evidence before the court suggesting that Salinas, in fact, did have a history of engaging in violence against women. It is undisputed that Salinas had been convicted of assaulting his wife; that conviction was the basis for the first modification to the terms of his supervised release. Furthermore, as we have discussed, the original and supplemental violation reports disclose that on more than one occasion, Salinas's forbidden contact with Barranco had involved violent behavior. Therefore, the district court had a factual basis for concluding that Salinas had committed violent acts against women independent of the error in the supplemental report.

Salinas suggests that it was inappropriate for the court to consider the instances of his allegedly violent contact with Barranco because these were mere allegations that he had not conceded as fact. The stipulation that Salinas signed did not acknowledge that Barranco had sustained injuries or that he was responsible for such injuries; and his counsel observed at the revocation and sentencing proceeding that "it has not been shown that [Salinas] acted violently towards the . . . person who made the complaint and . . . there were no arrests or prosecutions for any of these substantive offenses referred to in the report." R. 280 at 9. But the lack of a stipulation as to what occurred on these occasions did not preclude the district judge from taking into consideration what the violation reports told him about the incidents. *See United States v. Marvin*, 135 F.3d 1129, 1137-38 (7th Cir. 1998) (citing U.S.S.G. § 6B1.4(d), p.s. & comment.). A district court may rely on factual information supplied by a presentence report so long as it bears sufficient indicia of reliability to support its probable accuracy. *E.g.*, *United States v. Berkey*, 161 F.3d 1099, 1101-02 (7th Cir. 1998); *see also* Fed. R. Crim. P. 32(i)(3)(A) (district court may accept any undisputed portion of presentence report as a finding of fact). When the court relies on such information in sentencing a defendant, the defendant bears

the burden of showing that the presentence report is inaccurate or unreliable. *United States v. Taylor*, 72 F.3d 533, 547 (7th Cir. 1995); *United States v. Mustread*, 42 F.3d 1097, 1101-02 (7th Cir. 1994). A defendant does not satisfy this burden simply by denying the truth of what the presentence report represents as fact. *Id.* at 1102; *see also United States v. Purchess*, 107 F.3d 1261, 1268 (7th Cir. 1997). Rather, "he must produce some evidence that 'calls the reliability or correctness of the alleged facts into question.'" *Mustread*, 42 F.3d at 1102 (quoting *United States v. Isirov*, 986 F.2d 183, 186 (7th Cir. 1993)). Salinas did not do this; he did no more than note that the averments of the violation reports with respect to his violent behavior had not been verified. Indeed, even after the court remarked at the hearing that Salinas had twice caused Barranco to sustain injuries (R. 280 at 10-11) and that he had "a continual history of committing violent acts against women" (*id.* at 11), the defense voiced no objection to the court's evident reliance on the information contained in the violation reports. *See id.* at 13 (before concluding hearing, court inquired whether there was any reason why revocation and sentence should not be imposed; and neither party raised an objection). In the absence of a timely objection below, our review of the facts found by the district court is confined to one for plain error. *Berkey*, 161 F.3d at 1101. Salinas has not demonstrated that the court committed any error, plain or otherwise, in relying on the averments of the violation reports regarding his contacts with Barranco.

For these reasons, there is no need to remand this case to the district court for reconsideration. Although the supplemental violation report erroneously ascribed all of the modifications to the conditions of Salinas's release to his abusive behavior, the district court did not rely on that error. When the court commented on Salinas's history of violent behavior toward women and to the injuries that Barranco had suffered, it was relying not on the erroneous

reference to the reasons for the modifications but on other information in the violation reports regarding Salinas's prohibited contacts with Barranco. As Salinas did not present the court with any evidence indicating that the reports' averments about those incidents were inaccurate or unreliable, the court was entitled to rely on that information.

## B.

Salinas next challenges the district court's decision to sentence him to imprisonment for 24 months, a term well above the range recommended by the Sentencing Guidelines for the category of release violations that he had committed. This court reviews a sentence imposed following revocation of a defendant's supervised release to ascertain whether it was "plainly unreasonable." *United States v. McClanahan*, 136 F.3d 1146, 1149 (7th Cir. 1998); *United States v. Marvin*, *supra*, 135 F.3d at 1136. The "plainly unreasonable" standard "entails a deferential appellate posture concerning issues of fact and the exercise of discretion." *Id.*

Rather than establishing guidelines governing the revocation of supervised release, the Sentencing Commission has opted to promulgate a series of policy statements, including a Revocation Table of recommended sentencing ranges tied to the severity of a defendant's violations and his criminal history category—section 7B1.4(a), p.s. *See* U.S.S.G. Ch. 7, Pt. A, §§ 3, 4. Although these policy statements are non-binding, they are to be given "great weight" by the sentencing judge. *McClanahan*, 136 F.3d at 1149; *United States v. Wright*, 92 F.3d 502, 504 (7th Cir. 1996); *United States v. Hill*, 48 F.3d 228, 231 (7th Cir. 1995). Thus, the district court must at least consider the sentencing range recommended under section 7B1.4(a). *United States v. Doss*, 79 F.3d 76, 78 (7th Cir. 1996); *Hill*, 48 F.3d at 231. Nonetheless, the recommended range informs rather

than cabins the exercise of the judge's discretion. *McClanahan*, 136 F.3d at 1149.

In fashioning an appropriate sentence for release violations, the district court must also consider the sentencing factors listed in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense; the defendant's history; the need to deter future crime, protect the public, reflect the seriousness of the offense, and provide the defendant with necessary services like education and medical treatment; the Sentencing Commission's recommendations regarding sentence and policy; any pertinent policy statements; and sentence consistency for similar violations. 18 U.S.C. § 3583. The court need not make findings as to each of these factors; it need only make comments reflecting that the appropriate factors were considered. *United States v. Hale*, 107 F.3d 526, 530 (7th Cir. 1997).

A review of the record satisfies us that the district judge considered the factors set forth in section 3553(a) in deciding to revoke Salinas's supervised release and order him incarcerated for a term of 24 months. The remarks that Judge Shabaz made at sentencing indicate that he considered, *inter alia*, the nature and gravity of the release violations and the conduct underlying those violations, Salinas's overall history, the need to prevent him from committing additional crimes and to protect the public, and his need for services (specifically, a mental health assessment and counseling) aimed at stopping the behavior that underlay his release violations. R. 280. The judge also expressly recognized that the sentencing range recommended by the Guidelines was three to nine months and that the statutory maximum sentence was 36 months. *Id.* at 3, 8. The judge therefore complied with the statutory mandate. *See Hale*, 107 F.3d at 530 (remarks addressing some but not all of the factors identified in section 3553(a) sufficient).

In view of the statutory factors and the other circumstances of the case, the district judge reasonably concluded that a sentence in excess of the recommended range was called for. As Salinas reminds us, "[t]he violation of a condition of supervised release is not a crime as such, but it is a 'breach of trust' . . . ." *Hill*, 48 F.3d at 232, quoting United States Sentencing Comm'n, *Guidelines Manual* at 326-27 (Nov. 1, 1994); *see also Marvin*, 135 F.3d at 1137. Salinas contends that the district court inappropriately assessed his breach of trust in deciding to impose a prison term so much longer than the recommended range of three to nine months. He emphasizes that he was neither arrested nor prosecuted for any of the conduct that led the court to revoke his supervised release (although actually, as we have noted, the first modification to the terms of his release was based on his assault conviction); he also points out that although his violations were designated Grade C, the least serious designation under the Guidelines policy statements, *see* U.S.S.G. § 7B1.1(a), the 24-month sentence that he received was consistent with that recommended for an individual who has committed Grade B violations and who has a much more substantial criminal history category of V or VI, *see id.* § 7B1.4(a). Yet, over the course of his supervised release, Salinas had not only violated the conditions of that release on multiple occasions, but had continued to do so notwithstanding the increasingly onerous modifications (counseling, home confinement, and finally a 90 to 120-period in jail) that the court had imposed in an effort to modify his behavior. Moreover, the Grade C designation of his release violations arguably did not reveal the complete story of the conduct underlying those violations. Salinas's continued contacts with Barranco, in violation of his probation officer's directive, involved aggressive, violent behavior that resulted in injuries to her. In short, Salinas's conduct displayed not only a pattern of defying the orders of the court and his probation officer, but engaging in behavior that injured or posed the risk of injury to others.

Thus, although the sentence that the district court chose to impose was significantly longer than the recommended sentence, it was not plainly unreasonable. In arriving at the sentence, the district judge considered the factors set forth in section 3553(a) and he acknowledged and considered the sentencing range proposed by the Guidelines policy statements. The district judge also amply explained his reasons for concluding that a sentence of only three to nine months was not sufficient to address the concerns raised by conduct.

### III.

We DISMISS Appeal No. 02-4102 as untimely and Appeal No. 02-4142 for conceded lack of merit. With respect to Appeal No. 02-4008, having concluded that the error in the supplemental violation report had no impact on the district court's sentencing rationale and that the court's decision to sentence Salinas to a term of 24 months was not plainly unreasonable, we AFFIRM the sentence.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*