In the

# United States Court of Appeals

### For the Seventh Circuit

―――――――

No. 06-3935

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PATRICIA PITRE,

*Defendant-Appellant.*

―――――――

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 925—**Harry D. Leinenweber,** *Judge.*

―――――――

ARGUED JULY 10, 2007—DECIDED OCTOBER 3, 2007

―――――――

Before BAUER, CUDAHY and RIPPLE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* While serving a term of super-
vised release, Patricia Pitre tested positive for cocaine. As
a result, the district court revoked her supervised release
and imposed a term of 18 months' reimprisonment fol-
lowed by 18 months' supervised release. Ms. Pitre timely
appeals her term of reimprisonment on the grounds that
the district court imposed judgment without inviting her
to allocute or without considering the applicable policy
statements and imprisonment range set forth in § 7B1.4
of the guidelines. For the reasons set forth in this opinion,
we affirm the judgment of the district court.

**I**

**BACKGROUND**

After pleading guilty to mail fraud, credit card fraud and conspiracy to commit credit card fraud, Ms. Pitre was sentenced to six months' imprisonment followed by a single three-year term of supervised release. Ms. Pitre was released from prison and began serving her term of supervised release in November 2004. As relevant to this appeal, the conditions of her supervised release required her to refrain from unlawful drug use, to submit to periodic drug testing and to participate in drug aftercare.

Within two weeks of her release from prison, Ms. Pitre violated the conditions of her supervised release when she tested positive for cocaine. She then tested positive on four more occasions over the next three months. On the recommendation of her probation officer, Ms. Pitre voluntarily entered a 30-day drug rehabilitation program. Following completion of the program, Ms. Pitre remained clean for almost five months before testing positive for cocaine three more times in August 2005. As a result, the district court ordered her to serve 120 days at the Salvation Army Community Correctional Center, where she would receive inpatient drug treatment. Ms. Pitre completed that program in February 2006, but met with only short-term success; in June 2006 she once again tested positive for cocaine.

Given her history of illegal drug use and the lack of further treatment programs available through the probation office, Ms. Pitre's probation officer petitioned the district court to revoke her supervised release. The probation officer determined that Ms. Pitre had committed a Grade C violation, resulting in a guidelines imprisonment

range of three to nine months. However, the probation officer recommended that Ms. Pitre be reimprisoned for 18 months to ensure that she would be able to complete the in-custody drug treatment program provided by the Bureau of Prisons. The probation officer further recommended that this term of reimprisonment be followed by 18 months' supervised release. The probation officer also noted that revocation of Ms. Pitre's supervised release was mandatory because she had tested positive for cocaine more than three times during the past year. *See* 18 U.S.C. § 3583(g)(4).

The hearing to revoke Ms. Pitre's supervised release proceeded in two parts. It initially convened on August 31, 2006. The Government presented evidence that Ms. Pitre had tested positive for cocaine on four occasions during the preceding year; the most recent positive result was 16 days before the hearing. The Government sought 18 months' imprisonment to ensure that Ms. Pitre could enter and complete the Bureau of Prisons' nine-month drug treatment program. The Government also requested an equal term of post-incarceration supervised release. Ms. Pitre, through counsel, objected to the proposed term of incarceration and subsequent supervised release. Counsel noted that she had been employed gainfully and had obtained an apartment while on supervised release. Counsel then suggested that the court continue the revocation hearing for 30 days to see how she did with respect to drug tests over that period.

The district court agreed to continue the hearing for 30 days, but warned Ms. Pitre that, if she missed or failed any drug tests in that time, she would be reimprisoned for 18 months. Ms. Pitre acknowledged these conditions:

THE COURT: I will continue the matter for 30 days and if she is dirty at all then she is getting the 18 months, and if not, then—if she can stay off for 30 days then we will maybe give her another 60 days or so, but one dirty drop or if she fails to show, I mean it, it is going to be automatic. Do you understand that?

DEFENDANT: Yes.

THE COURT: I don't know if that will do any good or not, but you know, I am not going to hear any arguments one way or the other, you are going for the 18 months if you miss a drop or if you have a dirty drop, okay?

DEFENDANT: Okay.

R.114-1 at 11.

When the hearing reconvened on October 3, 2006, the Government reported that Ms. Pitre had tested positive twice since the continuance. Ms. Pitre, through counsel, conceded the Government's account, but requested that the court recommend that her sentence be served as close to Chicago as possible. Counsel advanced no arguments against her reimprisonment, including the length of reimprisonment. Without affording Ms. Pitre an opportunity to address personally the court, the district court then revoked Ms. Pitre's supervised release and imposed the term of reimprisonment recommended by the Government. Neither Ms. Pitre nor her counsel objected to the lack of opportunity for Ms. Pitre to allocute.

## II

## DISCUSSION

Ms. Pitre now appeals her sentence of reimprisonment on two grounds. First, she contends that the district court must reconsider the terms of reimprisonment and supervised release because they were imposed without inviting her to allocute. Second, she submits that the district court abused its discretion when it imposed an 18-month term of reimprisonment because the court failed to consider the imprisonment range or policy statements set forth in U.S.S.G. § 7B1.4 before imposing sentence.

### A.

Ms. Pitre concedes that she forfeited her challenge based on the denial of her right to allocute. Therefore, our review is limited to plain error. *United States v. Luepke*, No. 06-3285, 2007 WL 2091227, slip op. at 10 (7th Cir. Jul. 24, 2007); *United States v. Reyna*, 358 F.3d 344, 348-50 (5th Cir. 2004) (en banc).

Plain error review requires us to determine whether: (1) error occurred; (2) the error was plain; and (3) the error affected the defendant's substantial rights. *United States v. Simpson*, 479 F.3d 492, 496 (7th Cir. 2007). If these criteria are met, we may reverse, in an exercise of discretion, if we determine that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*; *accord United States v. Olano*, 507 U.S. 725, 732 (1993).

**1.**

A criminal defendant's right to address the court on her own behalf at sentencing long has been recognized at common law and has been incorporated into Federal Rule of Criminal Procedure 32. *See Green v. United States*, 365 U.S. 301, 304 (1961); Fed. R. Crim. P. 32(i)(4)(A)(ii); *see also United States v. Barnes*, 948 F.2d 325, 328-29 (7th Cir. 1991). Although Rule 32 does not govern specifically revocations of supervised release, Federal Rule of Criminal Procedure 32.1 was amended in 2005 to state explicitly that the defendant is entitled to address the court during a hearing to revoke supervised release. *See* Fed. R. Crim. P. 32.1(b)(2)(E); Fed. R. Crim. P. 32.1 advisory committee's note.

Unlike Rule 32's right to allocution, which requires the court to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence" before imposing its sentence, Fed. R. Crim. P. 32(i)(4)(A)(ii), Rule 32.1 states only that the defendant "is entitled to . . . an opportunity to make a statement and present any information in mitigation," Fed. R. Crim. P. 32.1(b)(2)(E). The Government contends that, as a result of this difference in language, Rule 32.1 imposes a lesser obligation on the district court at revocation of supervised release than that imposed by Rule 32 at initial sentencing. However, the language of amended Rule 32.1 tracks the language of an earlier version of Rule 32 that the Supreme Court interpreted as granting criminal defendants a personal right to allocution and as imposing on trial judges a duty personally to invite defendants to speak before sentencing. *See Green*, 365 U.S. at 303 n.1; *see also Luepke*, slip op. at 11-12 & n.5 (discussing history of right to allocution under Rule 32). We therefore hold

that the right to allocution created by Rule 32.1 is not substantively different than the right created by Rule 32. Rule 32.1 requires a district court to ask the defendant if she wishes to make a statement for the court to consider before imposing a term of reimprisonment following revocation of supervised release. *Cf. Green*, 365 U.S. at 304; *Luepke*, slip op. at 12-13 (collecting cases).

In this case, there is little question that the district court did not address directly Ms. Pitre and give her an opportunity to allocute prior to imposing reimprisonment. At the August 2006 revocation hearing, the court asked her two closed-ended questions and issued a warning that failure to remain clean would result in 18 months' incarceration. When the hearing resumed on October 3, 2006, even though Ms. Pitre interjected, through counsel, a request that the district court recommend that her imprisonment be as close to Chicago as possible, at no time did the court ask Ms. Pitre if she wished to address the court or otherwise open the door to comment. Under these circumstances, as a practical matter, Ms. Pitre had no chance to speak on her own behalf. *See Reyna*, 358 F.3d at 346-50 (finding plain error where court asked defendant only pointed questions and issued warnings but did not invite defendant to speak in mitigation).

**2.**

We now must consider whether this error affected Ms. Pitre's substantial rights. The Supreme Court has stated that the burden of establishing whether a defendant's substantial rights were affected by an error generally requires the defendant to demonstrate prejudice. *See Olano*, 507 U.S. at 735. In cases where a defendant's right to

allocution has been violated, however, "a reviewing court should presume prejudice when there is any possibility that the defendant would have received a lesser sentence had the district court heard from [her] before imposing sentence." *Luepke*, slip op. at 15; *see also Reyna*, 358 F.3d at 351-52; *United States v. Adams*, 252 F.3d 276, 285-86, 289 (3d Cir. 2001). *But cf. United States v. Cole*, 27 F.3d 996, 999 (4th Cir. 1994) (declining to adopt a per se rule that denials of the right to allocution are prejudicial).

In *Luepke*, we addressed the quandary facing a defendant who must prove prejudice resulting from a violation of the right to allocution:

> It would be almost impossible to determine whether, in the context of the advisory guidelines and the court's balancing of the statutory sentencing factors, a defendant's statement, that was never made, would have altered the conclusions of the sentencing court. That the right to allocution, properly afforded, *could have* had such influence is the most we reasonably can expect a defendant to demonstrate.

Slip op. at 16. Given the nature of the right and the dearth of input from Ms. Pitre, we cannot conclude that Ms. Pitre would not have received a lesser sentence had she been allowed to address the court.

### 3.

We now turn to our final inquiry under the established plain error analysis: Whether the interests of justice dictate that we exercise our discretion to correct the error. We shall exercise our discretion in such a manner when the error "seriously affect[s] the fairness, integrity,

or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (citing *Olano*, 507 U.S. at 732) (modification in original).

Remand ordinarily is required when a defendant has been denied the right to allocution. *Luepke*, slip op. at 16; *Reyna*, 358 F.3d at 352; *Adams*, 252 F.3d at 288. Denial of the right to allocution, however, "is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). Thus, the general rule does not foreclose the possibility that the facts of a particular case may compel a conclusion that any violation of the defendant's right to allocution did not affect seriously the fairness of the judicial proceedings. *See Reyna*, 358 F.3d at 352.

Upon review of the record, we believe that the district court's failure to afford Ms. Pitre an opportunity to allocute does not so seriously affect the fairness, integrity or public reputation of judicial proceedings that reversal is required. This was Ms. Pitre's third appearance before the district court for violations of the terms of her supervised release. On the first occasion, the court modified the terms of her release to require inpatient drug treatment at the Salvation Army Community Correctional Center. Within six months of completing that program, Ms. Pitre once again appeared before the district court on subsequent violations. Instead of revoking her release at that time, the court granted Ms. Pitre's request to continue the revocation hearing to see how "she do[es] in the next 30 to 60 days." R.114-1 at 10. The court, however, warned that:

> I will continue the matter for 30 days and if she is
> dirty at all then she is getting the 18 months, and if not,

then—if she can stay off for 30 days then we will maybe give her another 60 days or so, but one dirty drop or if she fails to show, I mean it, it is going to be automatic.

. . . .

   . . . . I am not going to hear any arguments one way or the other, you are going for the 18 months if you miss a drop or if you have a dirty drop, okay?

*Id.* at 11. Ms. Pitre replied, "Okay." *Id.* When the hearing reconvened on October 3, 2006, the court enforced its agreement with Ms. Pitre; it sentenced her to 18 months' imprisonment. Ms. Pitre's acknowledgment of the district court's warning during the earlier hearing demonstrates that she knew what would happen if she tested positive for illegal drug use. Her attorney's comments when the hearing reconvened 33 days later likewise indicate that Ms. Pitre arrived at court intending to fulfill her end of the "bargain": "Ms. Pitre had only a single request for me today, and that is that the Court recommend to the U.S. Bureau of Prisons that she be incarcerated as close to Chicago as possible." R.114-2 at 4. Thus, on the facts of this case, we are satisfied that the district court's error in failing to address Ms. Pitre and allow her to speak in mitigation of her term of reimprisonment did not affect seriously the fairness, integrity or public reputation of her revocation proceedings. *See, e.g.*, *Reyna*, 358 F.3d at 352-53. We therefore decline to exercise our discretion to require a further hearing.

**B.**

   Ms. Pitre next challenges the district court's decision to impose an 18-month term of reimprisonment. According

to Ms. Pitre, the district court never mentioned its reasons for choosing a term of reimprisonment double the top of the applicable imprisonment range nor did it adopt the probation officer's findings or make findings of its own. She submits, therefore, that the court abused its discretion in determining the term of reimprisonment because it failed to consider the imprisonment range or policy statements set forth in § 7B1.4 of the guidelines. We only shall reverse the judgment of the district court following a revocation proceeding if the sentence imposed is plainly unreasonable. *United States v. Harvey*, 232 F.3d 585, 587 (7th Cir. 2000).[1] Further, because Ms. Pitre did not raise these arguments before the district court, we review only for plain error. *See id.* at 587.

The imprisonment range and policy statements set forth in U.S.S.G. § 7B1.4, although not binding, are entitled to great weight. *United States v. Carter*, 408 F.3d 852, 854 (7th Cir. 2005); *United States v. Salinas*, 365 F.3d 582, 588 (7th Cir. 2004). Accordingly, the district court must consider the factors set forth in § 7B1.4 in choosing a term of reimprisonment, but the recommended imprisonment range "informs rather than cabins" the court's sentencing discretion. *Salinas*, 365 F.3d at 588. On review, our inquiry focuses not "on the detail with which the district court expressed its reasons for imposing" a specific period of confinement, *United States v. Marvin*, 135 F.3d 1129, 1140 (7th Cir. 1998), but on whether the district court's statements on the record

---

[1] *But see United States v. Flagg*, 481 F.3d 946, 948-49 (7th Cir. 2007) (noting that it is an open question whether the plainly unreasonable standard has been supplanted by the reasonableness standard applied to review of sentences under *United States v. Booker*, 543 U.S. 220 (2005)).

reflect that it considered the appropriate factors in exercising its discretion, *see Salinas*, 365 F.3d at 588-89.

The record reveals that the district court considered the factors set forth in § 7B1.4 before imposing the 18-month term of reimprisonment. Although the district court did not discuss § 7B1.4 on the record before rendering judgment, the court told Ms. Pitre before it continued the revocation hearing that "if she can stay off [drugs] for 30 days then we will maybe give her another 60 days or so," R.114-1 at 11. The court therefore indicated that it had considered a period of confinement at or below the recommended range of three to nine months. *See* U.S.S.G. § 7B1.4(a); *see also Marvin*, 135 F.3d at 1139 (explaining that district court may impose term of reimprisonment anywhere from one day to statutory maximum). The court's remarks, however, also indicate that it had considered the possibility that Ms. Pitre would be unable to refrain from drug use and consequently would warrant a longer period of confinement. *See Carter*, 408 F.3d at 854 (holding that the district court must consider factors under § 7B1.4 as well as 18 U.S.C. § 3553(a) in fashioning penalty for violations of supervised release); *see also* 18 U.S.C. § 3553(a)(1) (listing defendant's history and characteristics as sentencing factors). Although not expressly adopted by the court, the Government had explained at the August 31, 2006 hearing that an extended period of confinement was necessary to ensure that Ms. Pitre could complete the Bureau of Prisons' custodial drug-treatment program. *See id.* § 3553(a)(2)(D) (listing need for medical care as sentencing factor). The court's failure formally to adopt the Government's reasoning is not plain error or, for that matter, any error at all. *See Salinas*, 365 F.3d at 589 (explaining that the district court need not make findings as to each resentencing factor so long as the

record reveals that the court considered the appropriate factors); *see also United States v. Olivas-Ramirez*, 487 F.3d 512, 517 (7th Cir. 2007) (explaining that district court need not make findings as to each sentencing factor so long as the record reveals that the court engaged in "meaningful consideration" of the factors).

Ms. Pitre certainly has not shown that the sentence imposed was plainly unreasonable. Here, the reason for the 18-month sentence was to ensure that Ms. Pitre would be able to complete the Bureau of Prisons' drug treatment program. This reasoning corresponds precisely to the reason for her reimprisonment, her persistent failure to remain free of cocaine.

## Conclusion

The district court erred in imposing a term of reimprisonment without affording Ms. Pitre an opportunity to address the court. That error was plain and prejudice should be presumed. Nevertheless, because this error did not affect the fairness, integrity or public reputation of Ms. Pitre's revocation proceeding, we decline to exercise our discretion to require a rehearing. We also conclude that the district court did not err in determining the length of Ms. Pitre's term of reimprisonment. Accordingly, the district court's judgment is affirmed.

AFFIRMED

BAUER, *Circuit Judge.* I submit a reluctant concurrence.

It is very difficult to quarrel with the well-reasoned and well-written opinion of the majority. On the other hand, I think the matter should be returned to the district court and the defendant should be permitted to allocute even at this late date.

I totally agree with the position of the opinion that the right of allocution before sentencing remains just as strong when the defendant faces sentence after parole or sentence revocation as at the original sentencing. In my view, that right is as close to an absolute as any rule of law can be. I would remand the matter to permit the defendant to exercise her right of allocution.

A true Copy:

     Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*