NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 3, 2017
Decided November 21, 2017

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-1698

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States |
| *Plaintiff-Appellee,* | District Court for the Southern District |
| | of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:12CR00129-001 |
| WILLIAM F. CONOUR, | |
| *Defendant-Appellant.* | Richard L. Young, |
| | *Judge.* |

**O R D E R**

William Conour, a former attorney, pleaded guilty to wire fraud after the government discovered he had swindled clients for years by stealing settlement proceeds. The district court initially sentenced him to 10 years in prison followed by a year of supervised release. But in a prior appeal we granted the parties' joint motion for resentencing in light of *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015). On remand the district court again sentenced Conour to 10 years, and he now argues that a third sentencing is necessary. He contends that the court misunderstood the scope of a *Thompson* remand and erred both by refusing to entertain arguments made in his sentencing memorandum and by denying him the right to allocute. We agree and remand again for resentencing.

Conour practiced law for nearly forty years and built a lucrative practice representing accident victims. Starting in 1999, he encouraged clients to leave him in charge of their settlement proceeds, which he promised to hand over to a trust company that would distribute the proceeds in a series of monthly payments instead of as a lump sum. But he skimmed much of this settlement money for himself. Even worse, sometimes he did not tell clients he had received their settlement proceeds (or even that the case had settled) and instead simply stole the funds. Conour's fraud finally came to light when the FBI received a tip in 2011.

A year later Conour was charged with wire fraud, 18 U.S.C. § 1343. The charging information alleges that, as part of a scheme to defraud, he had settled a client's case by faxing a release to an out-of-state insurance company. Conour received and negotiated the $450,000 settlement check without telling his client or giving the client any part of the funds. All told, the information accuses Conour of converting $4.5 million belonging to over 25 clients.

Conour pleaded guilty. He stipulated that he had "devised and conducted a scheme to defraud his clients out of money," settled the client's case without his knowledge, faxed the agreement using interstate wires, and used the $450,000 to pay his own expenses.

At his initial sentencing Conour conceded, through counsel, that the loss exceeds $2.5 million, that the number of victims is greater than 10, and that he had abused a position of trust. But he successfully contested several proposed increases to his offense level, and the district court granted him a 3-level reduction for acceptance of responsibility. Conour lost only two objections to upward adjustments: a 2-level increase for targeting vulnerable victims and another 2-level increase for using sophisticated means to commit the crime. After calculating a guidelines imprisonment range of 97 to 121 months, the court sentenced Conour to 120 months plus a year of supervised release. The court also imposed more than $6 million in restitution.

Conour appealed and filed a brief principally contending that the district court had imposed several problematic conditions of supervised release. After briefing was completed, we decided *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015). In response to our request for statements of position following *Thompson*, the parties filed a joint motion requesting a remand for resentencing, which we granted.

On remand Conour represented himself and sought both to revisit old issues and raise new ones. He first moved to dismiss the information and for bond pending resentencing. The district court denied both motions, characterizing Conour's motion to dismiss as "a last ditch attempt to evade responsibility for his conduct." Conour then

submitted a resentencing memorandum, again challenging the upward adjustments for targeting vulnerable victims and using sophisticated means. But he also argued for the first time that the loss is zero; that the number of victims is 2, not 10 or more; that he did not abuse a position of trust; and that he should not be ordered to pay any restitution.

The government replied that the district court's rulings on old matters are law of the case, and that Conour had waived his new arguments by not raising them at the initial sentencing or on appeal. Alternatively, the government said it was prepared to introduce evidence establishing the disputed guidelines matters. And since Conour seemed to be renouncing his previous declarations of fault, the government also argued that he should no longer receive the 3-level decrease for accepting responsibility.

The district judge did not delve into any of these issues at resentencing. At the outset the judge said he would entertain "discussion regarding conditions of supervised release" (as well as a second matter that Conour declined to pursue). But the judge concluded that Conour had waived any objection to rulings made at the first sentencing but not challenged on appeal. The judge reasoned that he was "not authorized by the 7th Circuit to reopen those matters." And when asked by the prosecutor if he would reassess prior rulings if authorized, the judge first said no, explaining that he still thought 10 years was an appropriate sentence. But then the judge added that he was incorporating the original sentencing into the record, and that he was "not authorized to disturb that." The judge then asked for comments about the appropriate conditions of supervised release; Conour offered none, and the government proposed eliminating supervised release entirely. The judge accepted that proposal and resentenced Conour to 10 years' imprisonment without any supervised release.

After the judge had pronounced this sentence, the prosecutor urged him to let Conour speak about his efforts to rehabilitate himself in prison. At that point, the judge told Conour that he could make a statement:

> [Y]ou certainly have a right and an opportunity to make any statement you wish to the Court regarding the issue of sentencing, any issues in sentencing that I'm authorized to take a look at here; or for that matter, anything that's on your mind that is relevant to the matters we're discussing here today.

Conour then engaged the judge in a dialogue touching on his resentencing memo, and the judge repeated his position that Conour had waived his arguments by not raising them previously.

On appeal Conour argues that the district judge erred by declining to conduct a full resentencing. He says that his case is indistinguishable from *United States v. Mobley*, 833 F.3d 797, 803 (7th Cir. 2016), in which we remanded a second time for resentencing because the sentencing judge had misunderstood the scope of a *Thompson* remand. Similarly, says Conour, in his case the judge mistakenly believed that the remand was limited to revising the conditions of supervised release and did not encompass Conour's other arguments. Moreover, the judge—again, as in *Mobley*—did not let Conour allocute before pronouncing sentence. Thus, Conour concludes, we must again remand for resentencing.

The government concedes that the district judge misunderstood the scope of the remand and thus erred in thinking he lacked the authority to consider Conour's arguments. As we explained in *Mobley*, a district court may, following a *Thompson* remand, "reconsider the sentence as a whole" in order to "effectuate its sentencing intent." 833 F.3d at 801. That means the sentencing court may, in its discretion, reassess prior rulings and entertain entirely new contentions, even if they could have been raised previously. *See id.* at 801–02.

The district court did not know about this discretion (understandably, since *Mobley* had not even been argued). But the government says that knowing about it would not have made a difference. According to the government, Conour's case is similar to *United States v. Lewis*, 842 F.3d 467, 474 & n.2 (7th Cir. 2016), in which we concluded that a district court's ignorance about its power to entertain new arguments after a *Thompson* remand was harmless. The government contends that here the district court "left no doubt" that it would not have exercised its discretion to hear Conour's arguments. And, the government continues, Conour's resentencing memo contained meritless arguments that could not have benefitted him.

Conour's case, however, is closer to *Mobley* than to *Lewis*. In *Lewis*, the district court had entertained the defendant's renewed arguments and calculated a lower imprisonment range before choosing to impose the same prison sentence as before. 842 F.3d at 472–73. Here, the district court apparently thought it could not adjust the sentence. In *Lewis*, moreover, the district court alternatively considered the defendant's newly raised argument and rejected it on the merits, *id.* at 472, but in this case the judge did not share his views about any of Conour's arguments. The prosecutor did press the judge to say whether he would reassess his earlier rulings if allowed; the judge said no, but it is difficult to say if "no" meant that the judge *would not* or *could not*. After all, the exchange between them ended with the judge's comment that he was "not authorized to disturb" the record from the original sentencing. The judge's "no" *might* suggest

disinterest in rehashing issues already litigated, but that is far from certain; in short, his comments offer no insight about his willingness to consider the new arguments in Conour's resentencing memo.

Finally, in *Lewis* we were able to assess the defendant's argument because the district court had evaluated the merits and factual findings were unnecessary. But here the district judge did not consider Conour's new arguments. And Conour's principal contention about the amount of loss is a factual inquiry. *See United States v. Locke*, 643 F.3d 235, 244–45 (7th Cir. 2011); *United States v. Barnhart*, 599 F.3d 737, 747–48 (7th Cir. 2010). As in *Mobley*, the record shows that the district judge mistakenly believed that the remand was limited to revising the conditions of supervised release and thus thought he "had no discretion to hear new arguments (including ones not raised at any earlier stage), to hear new mitigation evidence, and to reconsider arguments made in an earlier sentencing hearing." 833 F.3d at 803.

We are skeptical, though, that the contentions in Conour's resentencing memo will help his cause. If anything, the district court seemed to conclude that those arguments weigh *against* him, rather than in his favor. Still, even if we could accept the government's assertion that futility makes the judge's mistake about *Thompson* harmless, the judge committed a second procedural error that warrants another resentencing: he did not invite Conour to allocute before imposing sentence. *See* FED. R. CRIM. P. 32(i)(4)(A)(ii).

Before a district court imposes sentence, it must invite the defendant personally to speak and give any information that might mitigate his sentence. *Id.* This right to allocute "is the right to have your request for mercy factored into the sentencing decision." *United States v. Barnes*, 948 F.2d 325, 329 (7th Cir. 1991). It is a personal right and separate from counsel's presentation because even "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green v. United States*, 365 U.S. 301, 304 (1961) (Frankfurter, J., plurality opinion). And on a full remand, like Conour's, the defendant has "no sentence until the district court imposes a new one," so his right to personally address the court is "revived" on remand. *Mobley*, 833 F.3d at 802; *see Barnes*, 948 F.2d at 330. Thus, Conour was entitled to again address the district court before sentence was imposed, but that opportunity was withheld. He did not object to the denial, though, so we review for plain error. *Mobley*, 833 F.3d at 803. That standard is met here.

The government says that plain error did not occur because Conour had "ample opportunity to address the district court" and identifies several occasions when he spoke at the resentencing. This misses the point. The rule requires that allocution

precede the court's selection of a sentence, but Conour's opportunity to speak at any length came *after* the court already had sentenced him. Before imposing the sentence, the judge asked Conour, who was proceeding pro se, only about the two issues he had raised in his first appeal.

A belated allocution is error unless the district court puts aside its original determination and takes "steps to *communicate* effectively to the defendant that, through his statement, he has a meaningful opportunity to influence the sentence." *United States v. Luepke*, 495 F.3d 443, 450 (7th Cir. 2007) (emphasis in original); *see Barnes*, 948 F.2d at 331 & n.5. After imposing sentence and then being reminded by the government about Conour's right to speak, the district judge invited Conour to address the court. But the judge did not set aside the sentence before hearing from Conour or give any assurances that he would reconsider the sentence already imposed.

We "presume prejudice when there is any possibility that the defendant would have received a lesser sentence had the district court heard from him before imposing sentence." *Luepke*, 495 F.3d at 450. The government does not concede that Conour was denied his right to allocute, so it makes no effort to refute this presumption. And we cannot say with certainty that Conour would not have received a lesser sentence had he been afforded the opportunity to allocute.

Still, we are not required to grant Conour relief, but we may if we determine that the error "seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings." *Luepke*, 495 F.3d at 451 (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)). Ordinarily we will remand when the right to allocute has been denied, "absent some rare indication from the face of the record" that the denial did not affect the fairness of the sentencing process. *Luepke*, 495 F.3d at 452; *see United States v. Pitre*, 504 F.3d 657, 663 (7th Cir. 2007).

The government argues that the procedures here were not unfair to Conour. Essentially the government suggests that Conour received the same reconsideration that other defendants receive when we direct a limited remand for reconsideration of the supervised-release portion of their sentences, except that Conour also personally addressed the court. Once again, the government misses the point. The government *joined* Conour in asking for a *Thompson* remand, which is a remand for a full resentencing, not a limited remand. Perhaps the government did not understand what it agreed to, but it must accept that we did what it asked and gave Conour a clean slate, which revived his right to allocute. *See Mobley*, 833 F.3d at 802.

We conclude that Conour's inability to allocute before he was sentenced did "seriously affect" the fairness of the proceedings. Conour was not given an opportunity

to speak about anything that might have mitigated his prison sentence—whether it was his rehabilitative efforts in prison, an explanation of his criminal actions, or even a rehashing of the arguments in his resentencing memo—before the judge imposed a sentence that was near the top of the guidelines imprisonment range. And, unlike in the majority of cases, Conour did not have counsel to voice arguments in mitigation on his behalf. Additionally, as the Tenth Circuit recently explained, even in circumstances where a lesser sentence might be unlikely, denying the defendant a chance to allocute undermines other values connected to the allocution, including giving him the chance to accept responsibility and providing the court with a better understanding of him. *See United States v. Bustamante-Conchas*, 850 F.3d 1130, 1142 (10th Cir. 2017). These circumstances, coupled with the district judge's erroneous belief that he could not entertain Conour's arguments about the guidelines calculations, might give the wrong impression to Conour and the public that the court imposed a predetermined (and, indeed, previously imposed) sentence.

Moreover, this case is unlike others in which we have declined to remedy allocution errors. The government has cited only one example where we did not remand for resentencing despite an allocution error. In *United States v. Noel*, 581 F.3d 490, 504 (7th Cir. 2009), we concluded that even though the district court did not personally invite the defendant to allocute at sentencing, the fairness of the process was not affected because the judge twice mentioned the right to allocute before imposing sentence, defense counsel read aloud a letter from the defendant that was structured similarly to an allocution, and the defendant received a sentence below the guidelines range. Differences in *Noel* and Conour's case abound: Conour was not informed of his right to address the court nor did he get to speak at any length before receiving his sentence at the high end of the guidelines range.

Apart from *Noel*, we are aware of only one other case in which we declined to remand, but that case involved revocation of supervised release. *See Pitre*, 504 F.3d at 663. The right to allocute at a revocation hearing is the same as at sentencing. *See id.* at 662. But *Pitre* also is distinguishable from Conour's case because the court in *Pitre* already had warned the defendant that she would receive a particular prison term if she again violated the conditions of her supervised release and then the court followed through the next time she broke her promise to abide by the conditions of release. *Id.* at 663. We concluded that denying the defendant her right to allocute did not affect the fairness of the proceedings because she knew she would receive a prison term of that length and her lawyer did not attempt to contest the term of imprisonment at the revocation hearing. *Id.* At Conour's resentencing, by contrast, the judge was not

simply implementing a predetermined prison term and Conour, as shown by his resentencing memo, did wish to speak to the court about the length of his sentence.

Finally, Conour asks that we reassign the case to a different district judge pursuant to Circuit Rule 36. But we see no reason why the district judge would be unable to fairly consider the issues on remand; he exhibited a willingness to comply with the court's remand order and showed no bias against Conour. *See United States v. Tova-Pina*, 713 F.3d 1143, 1148 (7th Cir. 2013).

Accordingly, we vacate the sentence and remand for resentencing.